**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**May 9, 2005**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 04-60234

---

JESUS MORTERA-CRUZ,

Petitioner,

versus

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

---

Petition for Review of an Order of the
Board of Immigration Appeals

---

Before GARWOOD, JONES and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Jesus Mortera-Cruz (Mortera) appeals the decision of the Board of Immigration Appeals (BIA) dismissing his petition for adjustment of status under 8 U.S.C. § 1255(i)(1)(A)(i) on the ground that he is inadmissible to the United States under 8 U.S.C. § 1182(a)(9)(C)(i)(I). We affirm.

**Facts and Proceedings Below**

Mortera is a native and citizen of Mexico.  He entered the United States illegally for the first time in November of 1996. On March 28, 2001, he married Margarita Mortera, who was then a lawful permanent resident and has since become a naturalized citizen.  Shortly after their marriage, Mrs. Mortera filed a petition with the Immigration and Naturalization Service (INS) for an immigrant visa for her husband.  This petition was received by the INS on April 28, 2001.

At some undetermined point after November 1996, Mortera left the United States and illegally reentered on June 10, 2001. Nearly a year later, on April 16, 2002, Mortera was convicted, on his guilty plea, by the United States District Court for the Northern District of Texas, of violating 8 U.S.C. § 1325(a) by illegally entering the United States without inspection on June 10, 2001.  On May 10, 2002, the Immigration and Customs Enforcement (ICE)[1] agency of the Department of Homeland Security (DHS) served Mortera with a Notice to Appear (NTA), alleging that he was subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without having been admitted

---

[1] On March 1, 2003, the INS ceased to exist.  Its duties were assigned to two agencies within the newly created Department of Homeland Security (DHS): Immigration and Customs Enforcement (ICE) and Citizenship and Immigration Services.  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, § 471(a), 116 Stat. 2135, 2205 (Nov. 25, 2002).

or paroled.[2]

In response to the NTA, Mortera appeared before an immigration judge (IJ) on September 25, 2002. Mortera maintained that the NTA was in error insofar as it alleged that he illegally entered the United States on June 10, 2001. Through counsel, he contended that his first and only illegal entry occurred in late 1996 and his plea to the contrary before the district court was inadvertent. With the consent of the DHS, the IJ amended the NTA by interlineation to reflect Mortera's representation that the operative date should be in 1996, not 2001. The IJ then found Mortera subject to removal in light of his admission that he had in fact entered illegally in 1996. Mortera then requested

---

[2] Section 1182(a)(6)(A)(i) provides:

"**§ 1182. Inadissible aliens**

**(a) Classes of aliens ineligible for visas or admission**

Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:

. . .

**(6) Illegal entrants and immigration violators**
**(A) Aliens present without admission or parole**
**(i) In General**

An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

permission to adjust his status under 8 U.S.C. § 1255(i)(1)(A)(i) to that of a lawful permanent resident on the basis of his wife's pending visa application for him.  The IJ granted Mortera a recess to pursue that option.

Mortera next appeared before the IJ on August 29, 2003, this time with a valid spousal visa, which ICE had approved on March 27, 2003.  The DHS contended that Mortera was not eligible to adjust his status under section 1255(i)(1)(A)(i) because he was inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I).  Section 1182(a)(9)(C)(i)(I) states that aliens are inadmissible if they have more than one year of unlawful presence in the United States and thereafter illegally enter or reenter the United States without being admitted.[3]  Mortera, the DHS argued, fell under

---

[3] Section 1182(a)(9)(C) provides:

"**§ 1182.  Inadmissible aliens**

**(a) Classes of aliens ineligible for visas or admission**

Except as otherwise provided in this chapter [8 U.S.C. §§ 1101-1537], aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:

. . .

   **(C) Aliens unlawfully present after previous immigration violations**

      **(i) In general**

      Any alien who –

4

section 1182(a)(9)(C)(i)(I) because he entered illegally in November of 1996, and then reentered illegally on June 10, 2001, after he had accumulated more than one year of illegal presence. The DHS took the position before the IJ that an alien subject to section 1182(a)(9)(C)(i)(I) was ineligible to adjust his status under section 1255(i)(1)(A)(i) to that of a lawful permanent resident.

Mortera responded once again stating that his 2002 conviction did not accurately reflect his conduct because he only once entered the United States illegally and that entry occurred

**(I)** has been unlawfully present in the United States for an aggregate period of more than 1 year, or

**(II)** has been ordered removed under section 1225(b)(1) of this title, section 1229a of this title, or any other provision of law, and who enters or attempts to reenter the United States without being admitted is inadmissible.

**(ii) Exception**

Clause (i) shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Attorney General has consented to the alien's reapplying for admission."

5

in 1996,so he was not subject to section 1182(a)(9)(C)(i)(I) because he did not enter the United States without being admitted after he had been unlawfully present in the United States for more than one year.  The IJ, now faced with an objection from the DHS, was no longer willing to credit Mortera's account of the facts, and ruled that Mortera was collaterally estopped from denying the truth of the material allegations underlying his conviction.  The IJ then ruled in favor of the DHS, concluding that Mortera was inadmissible under section 1182(a)(9)(C)(i)(I) and, as a consequence, was ineligible to adjust his status under section 1255(i) to that of a lawful permanent resident.  The IJ also denied Mortera the opportunity to remove himself voluntarily, deciding he was untrustworthy because he had fraudulently used someone else's green card to obtain work.

Mortera then appealed to the BIA, which, on March 5, 2004, affirmed the decision of the IJ and dismissed the appeal.  In affirming the IJ, the BIA drew two important conclusions of law: (1) 8 U.S.C. § 1255(i)(1)(A)(i), which allows certain physically present aliens "who entered the United States without inspection" to adjust their status to that of a lawful permanent resident, applies only to aliens whose sole statutory ground of inadmissibility is established merely by their having made a single entry without inspection (e.g., those who are rendered inadmissible only by § 1182(a)(6)(A)(i), see note 2 *supra*); and

6

(2) the "[e]xcept as otherwise provided" clause of 8 U.S.C. §

1182(a) does not waive the inadmissibility created by section

1182(a)(9)(C)(i)(I) (see note 3, *supra*) and thereby permit such

an inadmissible alien to adjust his or her status under section

1255(i)(1)(A)(i).  It is from this disposition that Mortera now

appeals.[4]

### Standard of Review

The BIA's conclusions of law are reviewed *de novo*, "although

with the usual deference to the [BIA's] interpretation of

ambiguous portions of the Act in accordance with *Chevron U.S.A.*

*Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984)."

---

[4] Before the BIA Mortera also argued that the IJ had erred in finding that Mortera had entered the United States without being admitted in June 2001 or at any time other than his initial entry into the United States in November 1996, and that, because Mortera's only entry into the United States was his entry (without inspection) in November 1996, he did not enter the United States without admission *after* having been unlawfully present therein for more than one year and accordingly he was *not* within the terms of § 1182(a)(9)(C)(i)(I).  This contention was rejected by the BIA which found that the IJ correctly determined that Mortera had entered without admission in November 1996, and after remaining unlawfully present in the United States for more than one year, had reentered without admission in June 2001.  In his appeal to this court, Mortera does not challenge this determination of the BIA, and we accordingly accept it.

Mortera does not fall within the exception to § 1182(a)(9)(C)(i) provided for in § 1182(a)(9)(C)(ii) respecting an alien who has been outside the United States more than 10 years since his or her last departure and has, prior to attempting to be readmitted from a foreign contiguous territory, received the Attorney General's consent to reapply for admission (see note 3 *supra*).  Nor has Mortera ever contended otherwise.

*Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996).  To warrant deference, the BIA's interpretation of ambiguities in the law must be reasonable.  *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001).  In applying this standard, we are mindful that the Attorney General's construction of immigration law is entitled to considerable respect.  *Gonzalez v. Reno*, 212 F.3d 1338, 1349 n. 12 (11th Cir.) ("The authority of the executive branch in immigration matters stems from the primacy of the President and other executive officials (such as the INS) in matters touching upon foreign affairs.  Respect for the authority of the executive branch in foreign affairs is a well-established theme in our law.") (citing *INS v. Aguirre-Aguirre*, 119 S. Ct. 1439, 1445 (1999) and *United States v. Curtiss-Wright Export Corp.*, 57 S. Ct. 216, 221 (1936)), *reh'g denied*, 215 F.3d 1243, *cert. denied*, 120 S. Ct. 2737 (2000).

**Discussion**

I.

Mortera wants to adjust his status under 8 U.S.C. § 1255(i)(1)(A)(i) from that of an illegal alien to that of a lawful permanent resident.  Section 1255(i), titled "Adjustment of status of certain aliens physically present in United States," provides in relevant part:

> "(1) Notwithstanding the provisions of subsections (a) and (c) of this section, an alien physically present in the United States –

8

        (A) who –
             (i) entered the United States without
    inspection; or
             (ii) is within one of the classes
     enumerated in subsection (c) of this section; and
        (B) who is the beneficiary [of a spousal visa
        issued under 8 U.S.C. § 1153(d)]
    may apply to the Attorney General for the adjustment of
    his or her status to that of an alien lawfully admitted
    for permanent residence."[5]

The Attorney General may then grant the application *if*, *inter*

*alia*, "the alien is eligible to receive an immigrant visa and is

*admissible* to the United States for permanent residence[.]" 8

---

    [5] 8 U.S.C. § 1255(a) provides:

        **"§ 1255.   Adjustment of status of nonimmigrant to that
of person                    admitted for permanent residence**

        **(a) Status as person admitted for permanent residence
        on
    application and eligibility for immigrant visa**

            The status of an alien who was inspected
            and admitted or paroled into the United
            States may be adjusted by the Attorney
            General, in his discretion and under such
            regulations as he may prescribe, to that of
            an alien lawfully admitted for permanent
            residence if (1) the alien makes an
            application for such adjustment, (2) the
            alien is eligible to receive an immigrant
            visa and is admissible to the United States
            for permanent residence, and (3) an immigrant
            visa is immediately available to him at the
            time his application is filed."

    8 U.S.C. § 1255(c) (entitled "Alien crewmen, aliens
continuing or accepting unauthorized employment, and aliens
admitted in transit without visa") provides that "Subsection (a)
of this section shall not be applicable to (1) an alien crewman;
. . . [listing seven other sets of aliens within the general
categories stated in subsection (c)'s title]."

9

U.S.C. § 1255(i)(2)(A) (emphasis added).

The Government does not dispute that Mortera is physically present in the United States or that he is the beneficiary of a valid spousal visa. The Government maintains, however, that the Attorney General cannot lawfully adjust Mortera's status because, as the BIA determined, section 1182(a)(9)(C)(i)(I) renders him inadmissible to the United States.

The BIA concluded, as the Government now argues, that Mortera is indeed inadmissible under section 1182(a)(9)(C)(i)(I). Section 1182(a)(9)(C), titled "Aliens unlawfully present after previous immigration violations," states that any alien who "has been unlawfully present in the United States for an aggregate period of more than 1 year, . . . and who enters or attempts to reenter the United States without being admitted is *inadmissible*." 8 U.S.C. § 1182(a)(9)(C)(i)(I) (emphasis added) (see note 3 above). The Government contends that the BIA, in ruling Mortera inadmissible, was simply applying the law in a manner consistent with its plain language because Mortera had accumulated more than one year of unlawful presence and he thereafter committed an illegal reentry on June 10, 2001.

Mortera does *not* contend that section 1182(a)(C)(i)(I) does not apply to him – he in effect concedes that it does – but rather argues that the "except as otherwise provided" prefatory language in 8 U.S.C. § 1182(a) (see note 3 above) implicitly

*waives* this ground of inadmissibility for purposes of rendering him eligible for an adjustment of status under section 1255(i)(1)(A)(i).  Section 1182(a) states at the outset that "*[e]xcept as otherwise provided in this chapter*, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States." (emphasis added).  This "except as otherwise provided" language, Montera contends, was inserted by Congress to instruct courts that conflicts between section 1182(a) and any other provision of the Immigration and Nationality Act (INA), 8 § 1101-1537, should be resolved in favor of the other provision.  *See, e.g.,* BLACK'S LAW DICTIONARY 1344 (7th ed. 1999) (defining a savings clause as a "statutory provision exempting from coverage something that would otherwise be included.").  Mortera contends that just such a conflict exists in this case because section 1255(i)(1)(A)(i) provides for the adjustment of status by a physically present illegal alien like himself who "entered the United States without inspection" whereas section 1182(a)(9)(C)(i) defines him as inadmissible and therefore disqualifies him from adjusting his status.  He argues that in this context the savings clause acts as a waiver of his inadmissibility under section 1182(a)(9)(C)(i), thereby giving effect to the otherwise conflicting provision of section 1255(i)(1)(A)(i).

11

The general thrust of Montera's argument has some force, *as applied to* the ground of inadmissibility specified in 8 U.S.C. § 1182(a)(6)(A)(i) (entry without inspection; see note 2, *supra*), as the Government has recognized.  If being inadmissible by virtue of section 1182(a)(6)(A)(i) – entry without inspection – of itself precluded an alien from applying for adjustment of status under section 1255(i)(1)(A)(i) – allowing such application by aliens who "entered the United States without inspection" – then section 1255(i)(1)(A)(i) would be a wholly inoperative nullity.  In an effort to avoid treating section 1255(i)(1)(A)(i) as a nullity, the INS implemented a policy under which an alien's inadmissibility under section 1182(a)(6)(A)(i) would not of itself render the alien ineligible to apply for adjustment of status under section 1255(i)(1)(A)(i).  The Ninth Circuit recently summarized the history and rationale of this policy:

> "The INS itself has recognized the contradiction created by the statutory terms in [8 U.S.C. §§ 1182(a)(6)(A) and 1255(i)].  In a legal opinion issued by the INS's Office of General Counsel on February 19, 1997, the agency found that [section 1182(a)(6)(A)] did not create a statutory bar to adjustment of status, stating that,
> > Based on our review of the relevant legislative history of section [1255(i)], it is our opinion that Congress's goals in enacting section [1255(i)] of the Act would not be achieved were the Service to deem entrants without inspection inadmissible when they otherwise qualify for adjustment of status under section [1255(i)] of the Act.
> Gen. Couns. Mem. (Feb. 19, 1997), "Request for Legal

12

Opinion: The Impact of the 1996 Act on Section 245(i) of the Act," *quoted in* 74 No. 11 Interpreter Releases 499, 501, *INS General Counsel Issues Important Opinion on EWI Eligibility for Adjustment*, March 24, 1997. The legal opinion reached this result by focusing on the "savings clause" to [section 1182(a)], which precedes the list of classes of inadmissible aliens by stating that the following classes are inadmissible "*[e]xcept as otherwise provided in this chapter.*" [section 1182(a)] (emphasis added). This INS legal opinion suggests that [section 1182(a)(6)(A)] does not bar illegal entrants from receiving adjustment of status as a matter of law.

The INS confirmed the applicability of this interpretation in a guidance memorandum issued to all field directors and officers by the INS Associate Commissioner. *See* Memorandum by Louis D. Crocetti, Jr., INS Assoc. Comm'r (May 1, 1997), *reprinted in* 2 Bender's Immigration Bulletin 450, 452 (June 1, 1997) ("this new ground of inadmissibility[§ 212(a)(6)(A) ] does not disqualify aliens present in the United States without admission or parole from adjustment of status under section 245(i) of the Act"); *see also Immigration Law and Procedure*, Vol. 4, § 51.01[2][b], 51-15 n. 41 [section 1182(a)(6)(A)] "is trumped by a [section 245(i)] filing where it is permissible").

Thus, [section 1182(a)(6)(A)] is not a ground of inadmissibility that would categorically bar [Petitioner]'s application for adjustment of status."

*Perez-Gonzalez v. Ashcroft*, 379 F.3d 783, 791 (9th Cir. 2004); *see also* 74 NO. 11 Interpreter Releases 499 (March 24, 1997) & 74 NO. 25 Interpreter Releases 1033 (July 7, 1997) (explaining the legislative purpose and histories of section 1182's various subsections).

The BIA essentially took this position in denying adjustment of status to Mortera, stating that section 1255(i)(1)(A)(i) "was meant to provide a one-time waiver for aliens who entered without inspection [i.e. aliens who are inadmissible under section

13

1182(a)(6)(A)(i)], not for aliens with multiple illegal entries as described under section 212 [1182](a)(9)(C)(i)(I) of the Act."[6]

The precise reach of section 1255(i)(1)(A)(i) is an implicit statutory ambiguity the executive branch is authorized to fill. When Congress has left an implicit ambiguity such as this one, the question before us is simply "whether the [decision of the BIA] is based on a permissible construction of the statute." *Chevron*, 104 S. Ct. at 2782. In answering this question, we consider only whether the decision is arbitrary, capricious, or manifestly contrary to the Immigration and Nationality Act. *Id.* We may not substitute our own preference for a reasonable alternative formulated by the BIA. *Id; Nat'l R.R. Passenger Corp. v. Boston & Me. Corp.*, 112 S. Ct. 1394, 1401 (1992) ("Judicial deference to reasonable interpretations by an agency of a statute that it administers is a dominant, well-settled principle of federal law.") (citations omitted). The specific *Chevron* issue in this case is whether the BIA was acting arbitrarily when it refused to apply section 1255(i)(1)(A)(i) to

---

[6] While the BIA refers to "multiple" illegal entries, that was the context of the case before it. As the BIA recognized, § 1182(a)(9)(C)(i) "also requires" that there be an entry or reentry after "an unlawful presence in the United States for more than 1 year." The more than one year unlawful presence requirement does not itself require an illegal entry, as it can arise, for example, by overstaying a visa. Here, however, it arose by presence following the initial illegal entry.

14

Mortera's inadmissibility under section 1182(a)(9)(C)(i)(I) in the same way it would have applied section 1255(i)(1)(A)(i) to him if he were inadmissible only by reason of section 1182(a)(6)(A)(i).

To answer this question, it is useful to review the history of these three provisions. Section 1255(i) was enacted in 1994. Pub. L. 103-317, § 506(b), Oct. 1, 1994. Under the version of section 1182 then effective, an alien who was physically present in the United States pursuant to an entry without inspection could adjust his or her status under section 1255(i)(1)(A)(i) to that of a lawful permanent resident because section 1182 did not define such an alien as being inadmissible.[7] *See* 8 U.S.C. § 1182 prior to April 1, 1997 when Pub. L. 104-208, § 301(c)(1) became effective; 74 NO. 11 Interpreter Releases 499 (March 24, 1997), Appendix II at 3. This changed on April 1, 1997 when the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996 took effect and amended 8 U.S.C. § 1182(a)(6)(A)(i) into its present form, which does define aliens who have entered without inspection as inadmissible. Pub. L. 104-208, § 301(c)(1). The INS reasoned that the "except as otherwise provided" clause of section 1182(a) allowed 1255(i)(1)(A)(i) to continue to apply to

_____

[7] However, § 1255(a), as it presently exists, *and* as it has existed ever since many years prior to 1994, provides for adjustment of status only as to "an alien who was inspected and admitted or paroled into the United States" and who "is admissible to the United States." See note 5, *supra*.

15

aliens who had merely entered without inspection because to conclude otherwise would mean that Congress, in amending section 1182(a)(6)(A), intended to render section 1255(i)(1)(A)(i) superfluous and thereby work a major change in federal immigration policy by excluding *all* aliens who had entered without inspection from adjusting their status.

It is doubtful that this was what Congress intended because, tellingly, Congress did not repeal section 1255(i)(1)(A)(i) when it amended section 1182(a)(6)(A) on September 30, 1996 as part of IIRIRA and in fact, as part of an omnibus appropriations bill, revised it on the same day in small ways such as reformulating the surcharge for adjusting status. *See* Pub. L. 104-208, § 376(a)(1), September 30, 1996 (substituting "$1,000" in 8 U.S.C. § 1255(i)(1) for "five times the fee required for the processing of applications under this section."). In addition, the legislative history establishes that the rationale for the amendment to section 1182(a)(6)(A) was to eliminate certain procedural advantages some aliens acquired by entering illegally rather than taking the lawful route. 74 NO. 11 Interpreter Releases 499 (March 24, 1997), Appendix II at 5 (citing, *inter alia*, *Matter of Patel*, 20 I. & N. Dec. 368, 370 (BIA 1991) and *Matter of Estrada-Betancourt*, 12 I. & N. Dec. 191, 194 (BIA 1967)). The purpose of the IIRIRA change to section 1182(a)(6)(A), in other words, was not to preclude all aliens who

16

had entered without inspection from adjusting their status.

After careful consideration of IIRIRA's implications, the INS steered a middle course, adopting the position that the "except as otherwise provided" clause of section 1182(a) in effect waived the ground of inadmissibility created by section 1182(a)(6)(A). As a consequence of this waiver, some aliens who had entered without inspection, who had been eligible to adjust their status after 1994 and prior to the IIRIRA amendment, would still be able to adjust their status post-IIRIRA.

Mortera contends that the BIA, which rendered its decision in accordance with this policy, was acting arbitrarily when it refused to treat section 1255(i) as a waiver of his inadmissibility under section 1182(a)(9)(C)(i)(I), which was created by IIRIRA and has no pre-IIRIRA analogue. He in effect argues that there is no salient distinction between sections 1182(a)(6)(A) and (a)(9)(C)(i), and reasons that if, through section 1182(a)'s "except as otherwise provided" clause, section 1255(i)(1)(A)(i) waives the inadmissibility created by section 1182(a)(6)(A)(i), then it should *ipso facto* also waive the admissibility created by section 1182(a)(9)(C)(i).

Mortera finds support for his position in the Ninth Circuit's recent *Perez-Gonzalez* decision. The *Perez-Gonzalez* court considered, *inter alia*, whether aliens inadmissible under section 1182(a)(9)(C)(i) may avail themselves of section

17

1255(i)(1)(A)(i) in the same way that aliens inadmissible under section 1182(a)(6)(A) may do so.  This was a novel question and, unlike the extensive treatment the INS had given section 1182(a)(6)(A), there is no similar extensive official literature on the interplay between sections 1255(i) and 1182(a)(9)(C)(i). To the extent the INS had addressed this issue, it was in conclusory terms, *see* Memorandum by Louis D. Crocetti, Jr., INS Assoc. Comm'r (May 1, 1997), *reprinted in* 2 Bender's Immigration Bulletin 450, 452 (June 1, 1997),  which the panel rejected. *Perez-Gonzalez*, 379 F.3d at 792-93.  The court held that an alien inadmissible under section 1182(a)(9)(C)(i)(II) may adjust his or her status under section 1255(i) because "[n]othing in the statutory provisions regarding adjustment of status, nor in the discussion of its purposes, suggests that aliens who have been previously deported or removed are barred from this form of relief."  *Id.* at 793.

The Tenth Circuit also recently addressed the same basic question and expressly declined to follow *Perez-Gonzalez*. *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1166-1168 (10th Cir. 2004); *see also Lattab v. Ashcroft*, 384 F.3d 8, 17 (1st Cir. 2004) (stating, while considering somewhat different facts, "we have grave doubts about the correctness of the *Perez-Gonzalez* court's conclusion.").  Contrary to the *Perez-Gonzalez* court, and contrary to the position Mortera takes before us, the Tenth

18

Circuit distinguished the inadmissibility created by different subsections of section 1182(a). The *Berrum-Garcia* court concluded that the distinction between applying section 1255(i) to "one-time" illegal entrants (under section 1182(a)(9)(B)) but not those with multiple illegal entries under section 1182(a)(9)(C)(i) did not abrogate Berrum-Garcia's due process rights because the statutes make it clear that Congress considered the conduct at issue in section 1182(a)(9)(C)(i) more serious than that described in section 1182(a)(9)(B). 390 F.3d at 1167-1168. The court focused in particular on the fact that illegal aliens falling under the more severe section 1182(a)(9)(C)(i), to which Mortera is subject, face a lifetime ban on admissibility,[8] whereas those under section 1182(a)(9)(B) are inadmissible only for certain discrete periods based on the amount of illegal presence they accumulate. This observation led the court to conclude that "Congress did not consider those who reenter the United States in defiance of a prior deportation order to be qualified for section 1255(i)." *Id.* at 1167-68.[9]

---

[8] The alien subject to this lifetime ban may, after ten years, apply to the Attorney General to have the ban lifted. 8 U.S.C. § 1182(a)(9)(C)(ii).

[9] In the instant case, the basis for Mortera's inadmissibility is § 1182(a)(9)(C)(i)(I), which involves an illegal reentry after accumulating more than one year of illegal presence, whereas Berrum-Garcia was inadmissible under § 1182(a)(9)(C)(i)(II). For the purposes of our analysis, this is a distinction without a difference because both provisions are subject to the same default penalty of lifetime inadmissibility.

We agree with the Tenth Circuit that the conduct proscribed by section 1182(a)(9)(C)(i) is both different from and more culpable than the conduct of a one-time illegal alien subject to inadmissibility under 1182(a)(9)(B)(i) and, by extension, more culpable than the conduct of an alien who is inadmissible only under section 1182(a)(6)(A)(i).[10] The extent of the inadmissibility created by different immigration violations demonstrates that Congress intended to treat different violations differently. In our view, the policy developed by the executive branch, as expressed in the BIA's opinion, is a rational approach to reconciling the apparent tension in the statutes and in a reasonable way implements the intent of Congress that some, but not all, illegal aliens may adjust their status to that of a lawful permanent resident. *Unlike* section 1182(a)(6)(A)(i), application of section 1182(a)(9))C)(i) to preclude eligibility for adjustment of status under section 1255(i)(1)(A)(i) does *not* render section 1255(i)(1)(A)(i) a nullity. Not all aliens covered by section 1255(i)(1)(A)(i) are rendered inadmissible by

---

Also, the two provisions ((I) and (II)) have the same single subject ("Any alien who") and are but alternate predicates to the same single operative phrase, "who enters or attempts to reenter the United States without being admitted is inadmissible." See note 3 *supra*.

[10] *Compare* 8 U.S.C. § 1182(a)(6)(A)(i), under which inadmissibility is predicated on entry without parole or admission, and 8 U.S.C. § 1182(a)(9)(B)(i), under which inadmissibility is based on unlawful presence. Under neither provision is a second illegal entry an issue.

section 1182(a)(9)(C)(i).  We hold, therefore, that the decision of the BIA is entitled to *Chevron* deference because the Board was not acting arbitrarily when it ruled that Mortera, who is inadmissible under section 1182(a)(9)(C)(i)(I), is not eligible to adjust his status under section 1255(i)(1)(A)(i).

## Conclusion

For the foregoing reasons, the decision of the BIA is

AFFIRMED.