# Matter of Miguel LEMUS-Losa, Respondent

*Decided March 19, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Adjustment of status under section 245(i) of the Immigration and Nationality Act, 8 U.S.C. § 1255(i) (2006), is unavailable to an alien who is inadmissible under section 212(a)(9)(B)(i)(II) of the Act, 8 U.S.C. § 1182(a)(9)(B)(i)(II) (2006), absent a waiver. *Matter of Lemus*, 24 I&N Dec. 373 (BIA 2007), clarified.

FOR RESPONDENT: Rekha Sharma-Crawford, Esquire, Kansas City, Missouri

FOR THE DEPARTMENT OF HOMELAND SECURITY: James A. Lazarus, Associate Legal Advisor

BEFORE: Board Panel: PAULEY, WENDTLAND, and GREER, Board Members.

PAULEY, Board Member:

In a decision dated December 16, 2005, an Immigration Judge ordered the respondent removed from the United States after finding him ineligible for adjustment of status under section 245(i) of the Immigration and Nationality Act, 8 U.S.C. § 1255(i) (2000). According to the Immigration Judge, section 245(i) adjustment is unavailable to aliens, like the respondent, who are inadmissible to the United States under section 212(a)(9)(B)(i)(II) of the Act, 8 U.S.C. § 1182(a)(9)(B)(i)(II) (2000), and ineligible for a waiver under section 212(a)(9)(B)(v). We dismissed the respondent's appeal from the Immigration Judge's removal order in a precedent decision dated November 29, 2007. *Matter of Lemus*, 24 I&N Dec. 373 (BIA 2007).

The record is now before us on remand from the United States Court of Appeals for the Seventh Circuit, which reviewed our prior decision and found it deficient in various respects. *Lemus-Losa v. Holder*, 576 F.3d 752, 761 (7th Cir. 2009). After remand, we requested and received supplemental briefs from the parties. Upon consideration of the Seventh Circuit's decision and the very helpful arguments set forth in the parties' supplemental briefs, we respectfully reaffirm our prior determination that an alien's inadmissibility under section 212(a)(9)(B)(i)(II) precludes him from qualifying for section 245(i) adjustment of status absent a waiver. We nevertheless deem it prudent

to remand the record for the Immigration Judge to address several emergent issues bearing on the respondent's inadmissibility.

## I. FACTUAL AND PROCEDURAL HISTORY

The pertinent facts are undisputed. In 1998 or 1999 the respondent, a native and citizen of Mexico, entered the United States without inspection, after which he lived in the United States for approximately 2 years without lawful status. In 2001 or thereabouts, the respondent departed from the United States and returned to Mexico. In 2003, the respondent reentered the United States, again without inspection, and has remained here in unlawful status ever since. These removal proceedings commenced in 2005.

During his proceedings in Immigration Court, the respondent conceded removability from the United States under section 212(a)(6)(A)(i) of the Act for being present without having been admitted or paroled, but he applied for adjustment of status under section 245(i) of the Act.[1] To qualify for section 245(i) adjustment, an applicant must be "physically present in the United States" and must demonstrate that he or she is "admissible to the United States for permanent residence," among other things. Sections 245(i)(1), (2)(A) of the Act. The respondent is obviously "physically present in the United States" as a result of his 2003 reentry, but the Immigration Judge found that he is not "admissible . . . for permanent residence" because his history of immigration violations rendered him inadmissible under section 212(a)(9)(B)(i)(II) of the Act, which provides as follows:

> Any alien (other than an alien lawfully admitted for permanent residence) who—
>     . . .
>     (II)  has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible.

Despite the unambiguous "admissibility" requirement of section 245(i)(2)(A), the respondent maintains that inadmissibility under section 212(a)(9)(B)(i)(II) of the Act should not be an impediment to his adjustment of status because inadmissibility arising from "unlawful presence" in the United States is precisely the sort of violation that section 245(i) was designed to forgive. In effect, the respondent views section 245(i) of the Act

---

[1] The respondent filed his application for adjustment of status in September 2005. Because the respondent applied for adjustment of status after May 11, 2005, our review of his appeal is governed by amendments to the Act brought about by passage of the REAL ID Act of 2005, Division B of Pub. L. No. 109-13, 119 Stat. 302.

as embodying an implicit exception to the admissibility requirement for aliens who are covered by section 212(a)(9)(B)(i)(II) of the Act. We rejected that argument in our prior decision, for a number of reasons that bear further explanation in light of the Seventh Circuit's remand.

## II. ANALYSIS

### A. Section 245(i) of the Act

To qualify for adjustment of status under section 245(a) of the Act, an alien must prove that he has been "inspected and admitted or paroled" into the United States. Aliens who satisfy this inspection and admission or parole requirement may still be ineligible for adjustment of status, however, if they are covered by any of the exclusion clauses enumerated in section 245(c) of the Act. As we have previously explained, section 245(i) was enacted in 1994 to provide a temporary exception to these general limitations on eligibility for adjustment of status, thereby providing a path to lawful permanent residence for aliens who had "entered the United States without inspection" and were willing to pay a surcharge. *See Matter of Briones*, 24 I&N Dec. 355, 360-62 (BIA 2007) (discussing the purpose and history of section 245(i)).

Applicants for section 245(i) adjustment have always been required to prove that they are "admissible to the United States for permanent residence," *see* section 245(i)(2)(A) of the Act, meaning that they must prove either that they are not inadmissible under any of the various paragraphs of section 212(a) of the Act or that they are eligible for a waiver of any applicable ground of inadmissibility. 8 C.F.R. § 1245.10(b)(3) (2011). For the first few years after section 245(i) was enacted, this admissibility requirement was no impediment to adjustment for aliens who had "entered without inspection" because entry without inspection was then a ground of *deportability* rather than of inadmissibility. *See Matter of Briones*, 24 I&N Dec. at 362-63.

In 1996, however, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-597 ("IIRIRA"), which replaced the "entry without inspection" deportability ground with a new *inadmissibility* ground pertaining to aliens who are present in the United States without having been admitted or paroled. *See* section 212(a)(6)(A)(i) of the Act. A paradoxical effect of this amendment was seemingly to make entry without inspection "both a qualifying and a disqualifying condition for adjustment of status" under section 245(i). *Matter of Briones*, 24 I&N Dec. at 362. In addition, the IIRIRA created two new inadmissibility grounds covering aliens who seek admission to,

or unlawfully reenter, the United States after having committed previous immigration violations.  Sections 212(a)(9)(B), (C) of the Act.  However, it included no conforming amendments to clarify how these new inadmissibility grounds would affect aliens' eligibility for section 245(i) adjustment.

In *Matter of Briones*, we concluded that although the section 245(i)(2)(A) admissibility requirement was unambiguous, it could not be applied to make section 245(i) adjustment unavailable to aliens who are inadmissible solely under section 212(a)(6)(A)(i) of the Act, because such an interpretation "would render the language of section 245(i) so internally contradictory as to effectively vitiate the statute, an absurd result that Congress is presumed not to have intended."  24 I&N Dec. at 365 (citing *Demarest v. Manspeaker*, 498 U.S. 184, 190-91 (1991)).  We made clear, however, that this narrow "absurdity" exception applied *only* to section 212(a)(6)(A)(i).  Aliens who were inadmissible under *other* sections, such as section 212(a)(9)(C)(i)(I), remained subject to the plain language of section 245(i)(2)(A) because applying the "admissibility" requirement to them did not lead to absurd results or defeat the purpose for which section 245(i) was enacted.  *Id*. at 366-70; *see also Matter of Diaz and Lopez*, 25 I&N Dec. 188 (BIA 2010) (reaffirming *Matter of Briones*).[2]

In our prior decision in *this* case, we concluded that "much of our reasoning in *Matter of Briones* . . . applies to aliens, like the respondent, who are inadmissible under section 212(a)(9)(B)(i)(II) of the Act."  *Matter of Lemus*, 24 I&N Dec. at 378.  We observed at the outset that "the plain language of section 245(i)(2)(A) unambiguously requires an applicant for adjustment of status to prove that he is 'admissible to the United States for permanent residence,'" and we concluded that "[a]liens who are inadmissible under section 212(a)(9)(B)(i)(II) necessarily fail to meet that requirement, absent an available waiver" under section 212(a)(9)(B)(v) of the Act.  *Id.*  We also noted that applying section 245(i)(2)(A) to aliens who are inadmissible under section 212(a)(9)(B)(i)(II) does not vitiate the statute

---

[2] The reasoning embodied in *Matter of Briones* has been affirmed or adopted by every court that has reviewed it, including the Seventh Circuit.  *See Sarango v. Att'y Gen. of U.S.*, 651 F.3d 380, 387 (3d Cir. 2011); *Padilla-Caldera v. Holder*, 637 F.3d 1140, 1152 (10th Cir. 2011); *Renteria-Ledesma v. Holder*, 615 F.3d 903, 908 (8th Cir. 2010); *Ramirez v. Holder*, 609 F.3d 331, 333-34 (4th Cir. 2010); *Gonzalez-Balderas v. Holder*, 597 F.3d 869, 870 (7th Cir. 2010); *Mora v. Mukasey*, 550 F.3d 231, 232 (2d Cir. 2008); *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 908 (6th Cir. 2008); *Mortera-Cruz v. Gonzales*, 409 F.3d 246, 253 (5th Cir. 2005).  Although the Ninth Circuit initially agreed, it has recently ordered the issue to be reheard en banc.  *Garfias-Rodriguez v. Holder*, 649 F.3d 942 (9th Cir. 2011), *reh'g granted*, No. 09-72603, 2012 WL 678287 (9th Cir. Mar. 1, 2012).

or "lead to absurd consequences, as it would if we applied that [admissibility] requirement to aliens who are inadmissible under section 212(a)(6)(A)(i) for being present in the United States without having been admitted or paroled," since the class of aliens described in section 212(a)(9)(B)(i)(II) is much narrower than that covered by section 212(a)(6)(A)(i). *Id.* at 378.

Moreover, as in *Matter of Briones*, we deemed it important that in every *other* instance where Congress had extended eligibility for adjustment of status to classes of aliens who were unlawfully present in the United States, it had seen the necessity of *expressly* negating the applicability of section 212(a)(9)(B)(i)(II) by authorizing waivers of inadmissibility. *Matter of Lemus*, 24 I&N Dec. at 378 & n.5. Congress provided for such waivers in both the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, 111 Stat. 2193 (1997), *amended by* Pub. L. No. 105-139, 111 Stat. 2644 (1997) ("NACARA"), and the Haitian Refugee Immigration Fairness Act of 1998, Pub. L. No. 105-277, 112 Stat. 2681-538 ("HRIFA"). What is more, Congress created those NACARA and HRIFA waivers through the LIFE Act Amendments of 2000, Pub. L. No. 106-554, 114 Stat. 2763 ("LIFE Act Amendments") (effective as if included in the enactment of the Legal Immigration Family Equity Act, Pub. L. No. 106-553, 114 Stat. 2762 (2000)). The LIFE Act amendments also made substantial changes to section 245(i), but inclusion of a section 212(a)(9)(B) waiver was *not* among them.

This pattern of legislative activity has led us to conclude, first, that Congress understood inadmissibility under section 212(a)(9)(B) to be an impediment to adjustment of status that could only be overcome by a waiver (*even* when the form of adjustment of status being requested was reserved for aliens who were unlawfully present in the United States); second, that Congress knew how to create such waivers when it so desired; and third, that the absence of such a waiver for section 245(i) adjustment applicants was thus a deliberate omission.[3] Indeed, since Congress has already authorized a waiver of inadmissibility under section 212(a)(9)(B)(v) of the Act for aliens covered by section 212(a)(9)(B)(i)(II), there is good reason to believe that Congress understands *that* waiver to be the exclusive means by which an applicant for adjustment of status can overcome inadmissibility under section 212(a)(9)(B).

---

[3] As the Department of Homeland Security pointed out in its supplemental brief, Congress also passed a 2008 amendment to section 245(h)(2)(A) of the Act which expressly provides that inadmissibility under section 212(a)(9)(B) is no impediment to adjustment of status for certain "special immigrants." *See* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, § 235(d)(3), Pub. L. No. 110-457, 122 Stat. 5044, 5080. No similar exception has ever been enacted for section 245(i) adjustment applicants.

## B. Seventh Circuit's Decision

To date, the United States Courts of Appeals for the Third and Tenth Circuits have held that *Matter of Lemus* embodies a reasonable interpretation of an ambiguous statute, thereby entitling it to deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *see also Cheruku v. Att'y Gen. of U.S.*, 662 F.3d 198, 207 (3d Cir. 2011); *Herrera-Castillo v. Holder*, 573 F.3d 1004, 1008 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 3505 (2010). The Seventh Circuit declined to defer to *Lemus*, however, based on its judgment that we failed to "pay sufficient heed" to significant differences between section 212(a)(9)(B)(i)(II), which is at issue here, and section 212(a)(9)(C)(i)(I) of the Act, the ground of inadmissibility addressed in *Matter of Briones*, which was decided on the same day.[4] *Lemus-Losa v. Holder*, 576 F.3d at 761.

As the Seventh Circuit explained, sections 212(a)(9)(B)(i)(II) and (C)(i)(I) are both "triggered by an initial sojourn in the United States that was unlawful," but they are otherwise substantially different. *See id.* at 757. Specifically, section 212(a)(9)(C)(i)(I) applies solely to recidivist immigration violators—that is, to aliens "who enter[ ] or attempt[ ] to reenter the United States without being admitted" despite previous immigration violations, whereas section 212(a)(9)(B)(i)(II) applies to an ostensibly less culpable class of aliens who have accrued 1 year or more of unlawful presence in the United States and "again seek[] admission" within 10 years after departing. *Id.* at 758 (expressing the view that the Board should not "equate the unlawful re-entrant with someone who is 'seeking admission'"). Indeed, the Seventh Circuit opined that section 212(a)(9)(B)(i)(II) actually bears a closer resemblance to section 212(a)(6)(A)(i) of the Act (which pertains to first-time unlawful entrants) than it does to section 212(a)(9)(C)(i)(I): "[I]f someone is 'seeking admission' to the United States . . . and has thus demonstrated that he is willing to play by the rules, he is no different from the alien who is physically present in the United States 'without inspection' but who is entitled to apply for LIFE Act relief." *Id.* at 761. Because the Board had not taken sufficient care to address the differences between

---

[4] Section 212(a)(9)(C)(i)(I) of the Act provides as follows:

> Any alien who—
>      (I) has been unlawfully present in the United States for an aggregate period of more than 1 year . . .
>           . . .
> and who enters or attempts to reenter the United States without being admitted is inadmissible.

sections 212(a)(9)(B)(i)(II) and (C)(i)(I) of the Act—or, for that matter, between sections 212(a)(9)(B)(i)(II) and (6)(A)(i)—the court remanded the record to us for further proceedings, albeit without specific instructions.

*Matter of Lemus* is a Board precedent with nationwide applicability, the purpose of which is to ensure that section 245(i) of the Act is administered uniformly throughout the country. The Seventh Circuit's decision has cast doubt on its validity, however, resulting in a division of authority among the circuits. We therefore take this opportunity to clarify our jurisprudence, considering the points made in the Seventh Circuit's decision remanding the case.

### C. Interplay Between Sections 212(a)(9)(B)(i)(II) and 245(i)

The issue before us is one of statutory construction, pertaining to the interplay of sections 212(a)(9)(B) and 245(i) of the Act. As in any other case of statutory interpretation, the touchstone of our analysis is the plain language of the statute. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)). It is presumed that Congress "says in a statute what it means and means in a statute what it says there." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)) (internal quotation marks omitted). Thus, we cannot deviate from the unambiguous meaning of statutory language, except in those rare circumstances where strict adherence to the text would lead to an absurd or bizarre result that is "demonstrably at odds with the intentions of its drafters." *Demarest v. Manspeaker*, 498 U.S. at 190 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)) (internal quotation marks omitted).

As we noted in our prior decision, section 245(i)(2)(A) of the Act unambiguously requires applicants for section 245(i) adjustment to prove that they are "admissible to the United States for permanent residence." *Matter of Lemus*, 24 I&N Dec. at 378. If we apply this language literally, it follows that any alien who is inadmissible under section 212(a)(9)(B)(i)(II) of the Act is ineligible for adjustment, absent a waiver under section 212(a)(9)(B)(v). Thus, the question we must decide is whether interpreting the statutory language literally leads to results that are "demonstrably at odds" with congressional intent. We conclude that it does not.

### 1.  Section 212(a)(9)(B)(i)(II) Is Not Coterminous With
### Section 212(a)(6)(A)(i)

We held in *Briones* that it would be absurd to apply the section 245(i)(2)(A) admissibility requirement to aliens who are inadmissible solely under section 212(a)(6)(A)(i) of the Act, since that class of aliens is virtually coextensive with those who have "entered without inspection." Essential to that holding was the fact that "entry without inspection" is expressly identified by the Act as a condition that section 245(i) was designed to ameliorate. As the DHS has argued persuasively in its supplemental brief, however, the conduct that renders aliens inadmissible under section 212(a)(9)(B)(i)(II) does not remotely resemble "entry without inspection" or any other condition waived by section 245(i).

As a threshold matter, we consider it important that an alien need *never* have entered the United States without inspection in order to become inadmissible under section 212(a)(9)(B)(i)(II). Inadmissibility under this section is triggered when an alien has (1) accrued a relatively lengthy period of "unlawful presence" in the United States, (2) departed this country, and then (3) sought admission less than 10 years after departing. *See Matter of Rodarte*, 23 I&N Dec. 905, 908-10 (BIA 2006). "Unlawful presence" includes presence accrued after *lawful admission* (such as where an alien overstays a temporary nonimmigrant visa); it is not limited to periods accrued after entry without inspection. Furthermore, an alien can "again seek[] admission" within the meaning of section 212(a)(9)(B)(i)(II) without entering the United States unlawfully—for example, by applying for a visa at a consulate abroad. Since entry without inspection is not a prerequisite to inadmissibility under section 212(a)(9)(B)(i)(II), we consider it unlikely that Congress would have understood aliens covered by that section to be eligible for section 245(i) adjustment, absent an available waiver under section 212(a)(9)(B)(v).

For purposes of section 245(i), perhaps the most important characteristic shared by all aliens who have "entered without inspection" is that they are, by definition, physically present inside the United States. Indeed, section 245(i)(1) of the Act makes physical presence in the United States an independent eligibility criterion for adjustment. Yet section 212(a)(9)(B)(i)(II) covers many aliens who are *not* physically present in the United States at all. On the contrary, it requires an alien to have *departed* from the United States before becoming inadmissible but does not require him to reenter. It is thus an alien's past or present departure from the United States, rather than his current presence within the country, that fundamentally defines him as a member of the section 212(a)(9)(B)(i)(II) class. Because the statutory language contemplates that many aliens covered by that section will be *outside* the United States and seeking admission from abroad,

we find it implausible to believe that Congress had such aliens in mind when making section 245(i) adjustment available to aliens who are physically present *inside* the United States after entering without inspection.

To recapitulate, the class of aliens covered by section 212(a)(9)(B)(i)(II) of the Act does not correspond with any of the classes section 245(i) was designed to benefit. The conduct that triggers inadmissibility under section 212(a)(9)(B)(i)(II) resembles neither "entry without inspection" nor any of the exclusionary conditions described in section 245(c) of the Act. Accordingly, the reasons for extending eligibility for section 245(i) adjustment to one-time unlawful entrants do not apply to those who have departed the country after accruing a substantial period of unlawful presence.

## 2. Relationship Between Sections 212(a)(9)(B)(i)(II) and (C)(i)(I)

Because our prior decision relied so heavily on the analysis set forth in *Briones*, some of our language suggested that section 212(a)(9)(B)(i)(II) is practically the same as section 212(a)(9)(C)(i)(I), the ground of inadmissibility at issue in *Briones*. On the contrary, sections 212(a)(9)(B)(i)(II) and (C)(i)(I) are substantially different, and we agree with the Seventh Circuit that immigration adjudicators should not draw simplistic equivalences between them. To the extent that we may have treated these sections as equivalent in our prior decision, we regret our imprecision and take this opportunity to refine our analysis. In doing so, however, we ultimately conclude that the differences between sections 212(a)(9)(B)(i)(II) and (C)(i)(I) do not justify differential treatment under section 245(i) of the Act.

First and foremost, we note that section 212(a)(9)(C)(i)(I) is limited in scope to *recidivist* immigration violators, that is, to aliens who have reentered the United States unlawfully after a prior period of unlawful presence. In contrast, the primary focus of section 212(a)(9)(B)(i)(II) of the Act is *not* on recidivists, but rather on those who departed the United States after a period of unlawful presence or a prior removal and who subsequently seek "admission." Thus, although section 212(a)(9)(B)(i)(II) is designed to make it more difficult for aliens with prior immigration violations to return to the United States, an alien need not actually have reentered unlawfully to be inadmissible. To the extent our prior decision suggested otherwise, we now clarify it.

In distinguishing between the classes of aliens covered by sections 212(a)(9)(B)(i)(II) and (C)(i)(I), the Seventh Circuit found it significant that aliens covered by the former section are ostensibly "willing to play by the rules" because they are "seek[ing] admission" after departure, rather than simply reentering unlawfully. *Lemus-Losa v. Holder*, 576 F.3d at 761. With all respect, however, we consider that line of reasoning to proceed from

an understandable, but ultimately incorrect, set of assumptions regarding what it means to "seek admission" and "play by the rules" in the present context.

In ordinary parlance, the phrase "seeks admission" connotes a request for *permission* to enter, and we agree that an alien who requests permission to enter the United States would naturally be perceived to be "playing by the rules."[5] The problem, however, is that Congress has defined the concept of an "applicant for admission" in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission, or who have been brought in against their will under certain circumstances. According to section 235(a)(1) of the Act, 8 U.S.C. § 1225(a)(1) (2006):

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this Act an applicant for admission.

In other words, many people who are not *actually* requesting permission to enter the United States in the ordinary sense are nevertheless deemed to be "seeking admission" under the immigration laws.[6]

---

[5] As the DHS explains in its supplemental brief, however, deeming an applicant for admission to be "playing by the rules" is subject to a significant qualification when dealing with the class of aliens covered by section 212(a)(9)(B)(i)(II), all of whom have consummated at least one complete immigration violation before "again seek[ing] admission."

[6] In our prior decision, confusion about the proper meaning of the phrase "seeks admission" led us to commit an error, which we now correct. In a footnote, we declared ourselves "at a loss" to explain Congress's inclusion of the word "again" in section 212(a)(9)(B)(i)(II), since the rest of the statutory language did not seem to require the alien to have previously "applied for admission" in the ordinary sense of that phrase. *Matter of Lemus*, 24 I&N Dec. at 376 n.3. Because we did not then understand that Congress was using the phrase "seeks admission" as a term of art, we presumed that the word "again" must have been inserted into the statute through a drafting error. *Id.* What we failed to discern is that *all* aliens who have accrued past periods of "unlawful presence" in the United States have necessarily been "applicants for admission" at some point in the past. That is, they had either been *true* applicants for admission at some point (in that they had entered the United States with visas or other entry documents before their presence became unlawful) or they had entered unlawfully or been paroled into the United States but were deemed *constructive* applicants for admission by operation of section 235(a)(1) of the Act. Thus, any alien who applies for admission to the United States after accruing a prior period of unlawful presence is, in a very meaningful (if sometimes artificial) sense, "*again* seek[ing] admission."

Hence, the fact that an alien "again seeks admission" after departure within the meaning of section 212(a)(9)(B)(i)(II) of the Act does *not* absolve him of all culpability or even necessarily establish that he is less culpable than an alien covered by section 212(a)(9)(C)(i)(I). *See Cheruku v. Att'y Gen. of U.S.*, 662 F.3d at 207 (opining that "the difference in relative culpability" between the classes of aliens covered by sections 212(a)(9)(B)(i)(II) and (C)(i)(I) does not "absolve[] those barred by [section 212(a)(9)(B)(i)(II)] of all culpability or lead[] to the inevitable conclusion that Congress implicitly intended to waive inadmissibility for those aliens"). On the contrary, in some cases such an alien will have reentered the United States unlawfully, thereby making himself an "applicant for admission" by operation of law, while seeking "admission" through adjustment of status. *See Matter of Rodarte*, 23 I&N Dec. at 908; *see also Lemus-Losa v. Holder*, 576 F.3d at 757.

To be sure, many aliens covered by section 212(a)(9)(B)(i)(II) do "seek admission" in the ordinary way, by presenting themselves for inspection at ports of entry and requesting admission after having obtained visas and appropriate waivers of inadmissibility. Such individuals are plainly *unlike* the recidivist immigration violators covered by section 212(a)(9)(C)(i)(I) of the Act, although we think it significant that even those who "play by the rules" by following the orderly consular process would be denied admission, absent a waiver, if they are covered by section 212(a)(9)(B)(i)(II). *See Cheruku v. Att'y Gen. of U.S.*, 662 F.3d at 207 ("Under the ten-year bar, an alien with a one-year period of unlawful presence in the U.S. would not be eligible for consular admission and inspection at all during the applicable bar period without a waiver of inadmissibility."). For present purposes, however, we need not be overly concerned with individuals who are applying for admission from *outside* the United States; such aliens are not potential applicants for section 245(i) adjustment because they are not "physically present in the United States." Section 245(i)(1) of the Act.

In sum, although section 212(a)(9)(B)(i)(II) of the Act is substantially different from section 212(a)(9)(C)(i)(I), neither section covers mere "entry without inspection" or other conduct that section 245(i) was designed to ameliorate. Thus, applying the section 245(i)(2)(A) admissibility requirement to aliens who are inadmissible under section 212(a)(9)(B)(i)(II) does not undermine the purpose of section 245(i) adjustment or otherwise lead to absurd results. *See Cheruku v. Att'y Gen. of U.S.*, 662 F.3d at 206-07 ("An interpretation upholding the [section 212(a)(6)(A)(i)] bar would make unlawful presence 'both a qualifying and a disqualifying condition for adjustment of status,' but the same cannot be said for [section 212(a)(9)(B)(i)(II)]. Thus, no implicit waiver is required to give effect to the words of the statute." (quoting *Herrera-Castillo v. Holder*, 573 F.3d at 1007) (citations omitted)). In this regard, we note that a significant number of aliens

covered by section 212(a)(9)(B)(i)(II) of the Act can overcome their inadmissibility—and, by extension, qualify for adjustment of status—through the section 212(a)(9)(B)(v) waiver process. We therefore remain convinced that aliens inadmissible under section 212(a)(9)(B)(i)(II) of the Act are ineligible for section 245(i) adjustment *absent* such a waiver.

## D. Respondent's Inadmissibility

In our prior decision, we explained at some length why we considered the respondent to be inadmissible under section 212(a)(9)(B)(i)(II) of the Act. *See Matter of Lemus*, 24 I&N Dec. at 376-77. In his petition for review before the Seventh Circuit, the respondent challenged his inadmissibility, but the court ultimately found it unnecessary to resolve that issue. *Lemus-Losa v. Holder*, 576 F.3d at 761. We have been presented with no argument on remand that would cause us to reconsider this aspect of our prior analysis. Nevertheless, as a prudential matter we deem it appropriate to remand the record to the Immigration Judge for further consideration of the respondent's inadmissibility, for two reasons.

First, we note that section 212(a)(9)(B)(i)(II) of the Act provides for the inadmissibility of aliens who seek admission *within 10 years* of having departed the United States following the accrual of at least 1 year of unlawful presence. Given the Immigration Judge's finding that the respondent's inadmissibility under section 212(a)(9)(B)(i)(II) of the Act was triggered by a departure occurring on an unidentified date in *2001* (which was more than 10 years ago), a question naturally arises as to whether the passage of time has vitiated the respondent's inadmissibility under section 212(a)(9)(B)(i)(II). We believe that respectable arguments can be advanced to support either side of this question, and we are not inclined to leave such a potentially important issue unaddressed. Accordingly, we deem it advisable to remand the record for further examination by the Immigration Judge, who (unlike this Board) is empowered to receive relevant evidence and to enter whatever findings of fact might be necessary to resolve the issue.

The second reason for remanding is to allow the Immigration Judge to consider in the first instance whether the facts support the DHS's recent argument regarding the respondent's inadmissibility under section 212(a)(9)(C)(i)(I) of the Act. During the proceedings in Immigration Court, the Immigration Judge raised the question of the respondent's inadmissibility under section 212(a)(9)(B)(i)(II) on his own motion and then found the respondent ineligible for adjustment of status on that basis. Hence, the respondent's arguments on appeal (and those of the DHS in response) pertained solely to the interplay between sections 212(a)(9)(B)(i)(II) and 245(i). When the matter was remanded to us by the Seventh Circuit, however,

the DHS asserted that the respondent is *also* inadmissible under section 212(a)(9)(C)(i)(I), the ground at issue in *Matter of Briones*.

The respondent maintains that the DHS has waived the right to invoke his alleged inadmissibility under section 212(a)(9)(C)(i)(I) by failing to raise the issue sooner. But the waiver principles invoked by the respondent have no place where, as here, the sole issue in dispute—namely, the respondent's eligibility for section 245(i) adjustment—is a matter with respect to which he bears the exclusive burden of proof. Section 240(c)(4)(A) of the Act, 8 U.S.C. § 1229a(c)(4)(A) (2006). The respondent cannot meet his burden of proving that he is affirmatively "admissible . . . for permanent residence," as required by section 245(i)(2)(A), simply by arguing that the DHS neglected to point out his alleged inadmissibility sooner. In this regard, we observe that judicial rules pertaining to the waiver of arguments by *appellants* are not controlling here because the DHS was the prevailing party below and the *appellee* before this Board and the Seventh Circuit. *See Transamerica Ins. Co. v. South*, 125 F.3d 392, 399 (7th Cir. 1997) ("We certainly agree that the failure of an *appellee* to have raised all possible alternative grounds for affirming the district court's original decision, unlike an appellant's failure to raise all possible grounds for reversal, *should not operate as a waiver.* The urging of alternative grounds for affirmance is a privilege rather than a duty." (quoting *Schering Corp. v. Illinois Antibiotics Co.*, 89 F.3d 357, 358 (7th Cir. 1996) (internal quotation marks omitted))).[7] Because the DHS was not obliged to raise the respondent's alleged inadmissibility under section 212(a)(9)(C)(i)(I) in the first round of these proceedings, we will allow it to do so on remand.

## III. CONCLUSION

In conclusion, although we have carefully considered the issues raised by the Seventh Circuit in *Lemus-Losa v. Holder*, we respectfully conclude that an alien's inadmissibility under section 212(a)(9)(B)(i)(II) of the Act is sufficient to preclude him from satisfying the admissibility requirement of section 245(i)(2)(A), absent a section 212(a)(9)(B)(v) waiver. Nevertheless, given the passage of time since this matter was last before us and the emergence of new, unanswered questions regarding the respondent's inadmissibility under sections 212(a)(9)(B)(i)(II) and (C)(i)(I), we deem

---

[7] *Matter of Briones* had not yet been decided when this case was being argued before the Board; thus, sections 212(a)(9)(C)(i)(I) and 245(i) of the Act were not so well understood at that time that the DHS can fairly be charged with having failed to raise an obviously dispositive issue.

it appropriate to remand the record to the Immigration Judge for supplemental fact-finding and the entry of a new decision that accounts for all relevant intervening developments.

**ORDER:**  The appeal is dismissed.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.