# Matter of J-A-, Respondent

*Decided by Board August 8, 2025[1]*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Evidence that the Uzbek Government is pursuing charges of terrorist activity against the respondent, that he will be detained upon removal, and that there are isolated incidents of torture does not establish that he will more likely than not be tortured where there is insufficient evidence that he will be prosecuted for illegitimate reasons.

FOR THE RESPONDENT: Galina Rakityanskaya, Esquire, Rockville, Maryland

FOR THE DEPARTMENT OF HOMELAND SECURITY: Melissa Noyes, Assistant Chief Counsel

BEFORE: Board Panel: MULLANE and GOODWIN, Appellate Immigration Judges; GEMOETS, Temporary Appellate Immigration Judge.

MULLANE, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals from the Immigration Judge's October 28, 2024, decision granting the respondent's application for deferral of removal under the regulations implementing the Convention Against Torture ("CAT").[2] The respondent, a native and citizen of Uzbekistan, also appeals from the same decision, challenging the Immigration Judge's determination that he is ineligible for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2018). The respondent's appeal will be dismissed, DHS' appeal will be sustained, and the respondent will be ordered removed to Uzbekistan.

---

[1] Pursuant to Order No. 6404-2025, dated September 22, 2025, the Attorney General designated the Board's decision in *Matter of J-A-* (BIA Aug. 8, 2025), as precedent in all proceedings involving the same issue or issues. *See* 8 C.F.R. § 1003.1(g)(3) (2025). Editorial changes have been made consistent with the designation of the case as a precedent.

[2] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1208.17 (2025); 8 C.F.R. § 1208.18(a) (2020).

The respondent testified that Uzbek Government officials orchestrated his arrest in Russia based on false allegations that he joined an online group affiliated with a terrorist organization. The respondent was detained in Russia for a year while Uzbek officials tried to have him extradited. The respondent alleged that he later traveled to Turkey, where six men with Uzbek accents attacked and tried to kidnap him. The respondent was arrested in the United States in April 2024 pursuant to an Interpol Red Notice and subsequently applied for asylum and related protection.

The Immigration Judge found that the respondent was not a credible witness and did not present sufficient, reliable, and persuasive evidence to rehabilitate his noncredible testimony. Accordingly, the Immigration Judge denied the respondent's applications for asylum and withholding of removal because he did not meet the requisite burdens of proof. The Immigration Judge further found that the respondent is a national security risk and thus is barred from a grant of withholding of removal under the CAT. The Immigration Judge granted the respondent's application for deferral of removal under the CAT.

We adopt and affirm the Immigration Judge's decision denying the respondent's applications for asylum and withholding of removal. *See Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994) ("[O]ur independent review authority does not preclude the Board from adopting or affirming a decision of the immigration judge, in whole or in part, when we are in agreement with the reasoning and result of that decision."). The Immigration Judge properly based his adverse credibility finding on material inconsistencies within the respondent's testimony, as well as significant discrepancies and omissions between his testimony and the other evidence of record. *See* INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii). The respondent generally asserts on appeal that the Immigration Judge erred by relying on a "few minor inconsistencies" that he was not given an opportunity to explain, but the respondent does not provide specific examples to support that assertion).[3] To the contrary, the Immigration Judge's decision contains a detailed, eight-page discussion of the respondent's credibility that identifies numerous material inconsistencies and omissions and also addresses several of the respondent's explanations. We affirm the Immigration Judge's adverse credibility finding, as the respondent has not established that it is clearly erroneous. *See Cooper v. Harris*, 581 U.S. 285, 293 (2017) (holding that on clear error review, "[a] finding that is 'plausible' in light of the full record—even if another is equally or more so—must

---

[3] The Board denied the respondent's motion to accept his untimely filed brief. Our decision therefore refers to the arguments contained in the respondent's notice of appeal.

govern." (citation omitted)); *see also United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (explaining that clear error reversal requires that any definite and firm conviction regarding error be based on "the entire evidence").

In the absence of credible testimony, the respondent has not provided sufficient, reliable, and persuasive evidence to rehabilitate his noncredible testimony and meet his burden of proof for asylum or withholding of removal.      *See* INA §§ 208(b)(1)(B)(i), 241(b)(3)(C), 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(C).   Even if a respondent's evidence is treated as credible, "the agency need not find his evidence persuasive or sufficient to meet the burden of proof." *Garland v. Ming Dai*, 593 U.S. 357, 371–72 (2021) (finding that it was an error to "treat[] credibility as dispositive of both persuasiveness and legal sufficiency").   While a respondent need not directly corroborate every aspect of his claim, we conclude that the respondent's submissions, individually and in the aggregate, are insufficient to rehabilitate or corroborate his testimony.

The respondent also argues on appeal that the Immigration Judge relied in error on a Federal Bureau of Investigation ("FBI") memo to conclude that he is a danger to national security.   To the extent that the respondent is challenging the Immigration Judge's denial of his motion to suppress, we agree with the Immigration Judge, for the reasons explained in the decision, that the respondent did not establish a prima facie case for suppressing the FBI memo.   To the extent that the respondent is arguing more generally that the Immigration Judge erred by admitting the FBI memo into evidence and giving it full weight, we disagree.

The respondent asserts that the FBI memo was not properly authenticated because DHS did not produce a copy of an affidavit supporting the formal criminal charges that it claimed were filed against him.   The fact that a document is not formally authenticated does not mandate, however, that the evidence be rejected or suppressed.   Instead, "[i]n immigration proceedings, the 'sole test for admission of evidence is whether the evidence is probative and its admission is fundamentally fair.'"  *Matter of Mariscal-Hernandez*, 28 I&N Dec. 666, 668 (BIA 2022) (citation omitted).  The Immigration Judge properly found that although the FBI memo had not been authenticated, it was relevant and probative as to the fact of a pending criminal Federal investigation involving the respondent, which pertains to discretion and whether the respondent is a danger to national security.  We agree that the respondent provided insufficient evidence to establish that the information in the FBI memo was obtained through coercion or duress or was the result of egregious conduct.  The respondent's arguments on appeal do not establish

that the Immigration Judge's admission of the FBI memo into evidence was fundamentally unfair.  We conclude that the Immigration Judge properly admitted, weighed, and relied upon the FBI memo when assessing whether the respondent presents a national security risk.

Turning to the respondent's application for protection under the CAT, we agree with the Immigration Judge, for the reasons explained in the decision, that the respondent presents a national security risk and is thereby barred from a grant of withholding of removal under the CAT.  *See* INA § 241(b)(3)(B)(iv), 8 U.S.C. § 1231(b)(3)(B)(iv); 8 C.F.R. § 1208.16(d)(2). Upon de novo review, we conclude that the Immigration Judge erred, however, by determining that the respondent met his burden of proof for deferral of removal under the CAT, and thus we reverse that portion of the Immigration Judge's decision.  *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2025).

To determine whether the respondent has met his burden to establish that it is more likely than not he would be tortured upon removal, the Immigration Judge must examine two distinct questions: "(1) what is likely to happen to the [respondent] if removed; and (2) does what is likely to happen amount to the legal definition of torture?" *Myrie v. Att'y Gen. U.S.*, 855 F.3d 509, 516 (3d Cir. 2017) (citation omitted); *accord Quinteros v. Att'y Gen. of U.S.*, 945 F.3d 772, 787 (3d Cir. 2019).  "The first question is factual," and the Immigration Judge must make a finding of fact as to what exactly would happen to a respondent upon his return. *Kaplun v. Att'y Gen.*, 602 F.3d 260, 271 (3d Cir. 2010).  The second question is legal, and the Immigration Judge must determine whether what is likely to happen to the respondent upon his return amounts to torture. *Id*.

The respondent does not claim to have been tortured in the past by Uzbek Government officials but fears torture upon return to his country.  The Immigration Judge reasoned that the respondent will more likely than not be detained immediately upon his return to Uzbekistan and subjected to torture by Uzbek Government officials.  The Immigration Judge's analysis erroneously conflates the respondent's risk of arrest with his risk of torture. Even assuming arguendo that the respondent will be detained in Uzbekistan and face prosecution for alleged ties to terrorism, there is insufficient evidence to establish a clear probability that he will face harm rising to the level of torture.  The Immigration Judge relied in part on a decision of the European Court of Human Rights ("ECHR") that is general in nature and does not apply the same standard that an Immigration Judge must apply when analyzing a CAT claim.  The ECHR document finds the "existence of substantial grounds for believing that the applicant faces a real risk of ill-treatment" in his country.  This evidence is insufficient to meet the

respondent's burden of proof, however, as the respondent must show a clear probability of harm rising to the level of torture as defined by the CAT, which is more severe than "ill-treatment."  *See* 8 C.F.R. § 1208.18(a); *see also* 8 C.F.R. § 1208.16(c)(2).

The Immigration Judge also erred in his analysis by relying upon a "relatively small number of anecdotal incidents of mistreatment or death that fall well short of supporting a clear probability of torture."  *Matter of A-A-F-V-*, 29 I&N Dec. 118, 120 (BIA 2025); *see also Matter of A-A-R-*, 29 I&N Dec. 38, 41–42 (BIA 2025) (holding that anecdotal reports of some incidents of severe harm or death are not sufficient to show that the alien, in particular, would more likely than not be tortured in prison).  The Immigration Judge cited the United States Department of State's International Religious Freedom Report and Country Report for Uzbekistan, which includes a handful of examples of torture in Uzbekistan.  Although the evidence cited by the Immigration Judge establishes that there are isolated acts of torture in Uzbekistan, the record does not support the Immigration Judge's conclusion that torture is "widespread," and the respondent has not shown that such torture is so common that it is more likely than not that he will personally experience it.  *Matter of J-R-G-P-*, 27 I&N Dec. 482, 487 (BIA 2018).  "Evidence of the general possibility of torture does not meet the [respondent's] burden of establishing that it is more likely than not that he will be targeted for such treatment."  *Matter of A-A-F-V-*, 29 I&N Dec. at 121; *see also Matter of S-V-*, 22 I&N Dec. 1306, 1313 (BIA 2000) ("Specific grounds must exist that indicate the individual would be personally at risk.").

Finally, the Immigration Judge also erred in analyzing whether the respondent demonstrated that Uzbek Government officials have a specific intent to torture him.  The Immigration Judge's factual finding that the respondent is more likely than not to be detained upon removal to Uzbekistan is not clearly erroneous, as is it supported by independent, objective evidence in the record.  *See* 8 C.F.R. § 1003.1(d)(3)(i).  However, the record does not establish that any potential harm the respondent may face as a detainee in Uzbekistan is the result of a specific intent to cause pain or suffering.  *See Matter of A-A-F-V-*, 29 I&N Dec. at 120.  The Immigration Judge cited general evidence that the Uzbek Government has targeted and detained religious individuals using "trumped up" criminal charges but did not make specific findings that would support a clear probability of false charges being brought against this respondent.  While the Uzbek Government is pursuing prosecution of the respondent on charges of terrorist activity, there is insufficient evidence in the record to establish that the prosecution was initiated due to the respondent's religion or political opinion rather than for

legitimate reasons.  Even assuming that the respondent will be detained upon removal to Uzbekistan, the Immigration Judge's decision does not provide a sufficient basis for concluding that the Uzbek Government will more likely than not be motivated to purposely inflict torture upon him.  *Matter of J-F-F-*, 23 I&N Dec. 912, 917–18 (A.G. 2006) (holding that to establish eligibility for protection under the CAT, evidence must show that each step in the hypothetical chain of events is more likely than not to happen, and "that the entire chain will come together to result in the probability of torture of [the] respondent").  Accordingly, the following orders will be entered.

**ORDER:**  The respondent's appeal is dismissed.

**FURTHER ORDER:**  DHS' appeal is sustained, and the Immigration Judge's October 28, 2024, grant of the respondent's application for deferral of removal under the Convention Against Torture is reversed.

**FURTHER ORDER:**  The respondent is ordered removed from the United States to Uzbekistan.

**NOTICE:**  If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation.  *See* § INA 274D, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2025).