# Matter of Yujing SHENTU, Respondent

*Decided April 27, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An FBI Letterhead Memorandum indicating that the respondent is a potential national security risk warrants significant weight in bond proceedings.

FOR THE RESPONDENT:  Pro se

FOR THE DEPARTMENT OF HOMELAND SECURITY:  John R. Odle, Assistant Chief Counsel

BEFORE:    Board Panel:    MALPHRUS, Chief Appellate Immigration Judge; HUNSUCKER and CHABAN, Appellate Immigration Judges.

MALPHRUS, Chief Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals an Immigration Judge's bond order dated February 27, 2025, granting the respondent's request for a change in custody status and releasing her from custody upon payment of a $7,500 bond.  The Immigration Judge issued a memorandum explaining the bond decision on April 8, 2025.  During the pendency of the appeal, the respondent filed a motion to terminate and a motion to compel discovery or suppress evidence.  We will sustain the appeal, deny the respondent's motions, vacate the Immigration Judge's decision, and order the respondent detained without bond.

On April 12, 2024, DHS served the respondent, who is a native and citizen of the People's Republic of China, a notice to appear charging her with removability under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B) (2024), as an alien who is present in the United States in violation of law.  On February 15, 2025, DHS took the respondent into custody pursuant to section 236(a) of the INA, 8 U.S.C. § 1226(a) (2024), and the respondent requested a bond redetermination.

Prior to the bond redetermination hearing, DHS filed an FBI Letterhead Memorandum dated November 6, 2024, in support of its position that the respondent represents a national security risk and should remain in detention.  In granting the respondent's release on bond, the Immigration Judge noted

that DHS did not present the author of the FBI memorandum for testimony, the respondent contested DHS' allegations, and the respondent "showed respectful demeanor and appeared truthful" in her testimony that she had never been a member of the Chinese military and had not held any position with or been a member of the Chinese Communist Party. The Immigration Judge granted a change in custody status after determining that the respondent established her release would not pose a danger to persons or property and that she is not a flight risk. *See* INA § 236(a), 8 U.S.C. § 1226(a). On appeal, DHS argues that the Immigration Judge erred in weighing the evidence and that the respondent did not carry her burden of establishing she is not a danger.

At a bond hearing conducted pursuant to section 236(a) of the INA, 8 U.S.C. § 1226(a), the burden of proof is on the respondent to demonstrate that "release would not pose a danger to property or persons," and that the respondent "is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8) (2026); *accord Matter of Salas Pena*, 29 I&N Dec. 173, 174 (BIA 2025); *Matter of Adeniji*, 22 I&N Dec. 1102, 1112–13 (BIA 1999); *see also Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009) ("Dangerous aliens are properly detained without bond."); *Matter of Guerra*, 24 I&N Dec. 37, 39–40 (BIA 2006). An Immigration Judge has broad discretion to consider any matter deemed relevant when determining whether an alien's release on bond is permissible or advisable. *See Matter of Guerra*, 24 I&N Dec. at 39–40.

Moreover, dangerousness determinations may properly consider national security concerns and need not be limited to evidence of prior criminal conduct. *Matter of Fatahi*, 26 I&N Dec. 791, 793–94 (BIA 2016) ("The Supreme Court has long recognized national security concerns as a fundamental consideration in immigration bond proceedings.") (citing *Demore v. Kim*, 538 U.S. 510, 523–24 (2003)). Section 236(a) of the INA, 8 U.S.C. § 1226(a), "does not give detained aliens any *right* to release on bond." *Matter of D-J-*, 23 I&N Dec. 572, 575 (A.G. 2003) (emphasis in original). Rather, it "merely gives the [Immigration Judge] the authority to grant bond if he [or she] concludes, in the exercise of broad discretion, that the alien's release on bond is warranted." *Id.* (emphasis omitted).

Upon de novo review, we conclude that the Immigration Judge gave insufficient weight to DHS' evidence and that the respondent did not carry her burden to show that her release would not pose a danger to persons or property. 8 C.F.R. §§ 1003.1(d)(3)(ii) (2026), 1236.1(c)(8); *see Matter of Guerra*, 24 I&N Dec. at 40; *Matter of Fatahi*, 26 I&N Dec. at 793–94. The FBI Letterhead Memorandum submitted by DHS states that the respondent

is the subject of an active national security investigation and is believed to be engaged with a foreign government in a manner that presents a national security threat. The respondent argues that the FBI Letterhead Memorandum is unsigned, unsworn, and therefore inherently unreliable.

We reject the respondent's argument that the Immigration Judge erred by admitting the FBI Letterhead Memorandum. "In immigration proceedings, the 'sole test for admission of evidence is whether the evidence is probative and its admission is fundamentally fair.'" *Matter of E-F-N-*, 28 I&N Dec. 591, 593 (BIA 2022) (quoting *Matter of D-R-*, 25 I&N Dec. 445, 458 (BIA 2011), *remanded on other grounds, Radojkovic v. Holder*, 599 F. App'x 646 (9th Cir. 2015)). Further, courts have long recognized that public officials are presumed to perform their duties properly and that records made by public officials in the ordinary course of their duties carry strong indicia of reliability. *See, e.g., Matter of Barcenas,* 19 I&N Dec. 609, 611 (BIA 1988) (holding that a Form I-213, Record of Deportable/Inadmissible Alien, is inherently reliable and admissible to prove alienage); *see also Olender v. United States*, 210 F.2d 795, 801 (9th Cir. 1954) (holding that "records and reports prepared by [government] officials in the course of their duties are generally trustworthy"). Immigration proceedings are civil in nature and are not governed by the Federal Rules of Evidence. *Matter of D-R-*, 25 I&N Dec. at 445. In addition, "hearsay rules are not binding in immigration proceedings." *Matter of O-R-E-*, 28 I&N Dec. 330, 337 (BIA 2021).

While the respondent disagrees with the FBI Letterhead Memorandum and asserts that it is based on undisclosed intelligence, anonymous sources, and ethnic suspicion rather than on actual evidence, she has not carried her burden of establishing that the evidence was inaccurate, obtained by coercion or duress, or otherwise fundamentally unfair to admit. *See Matter of Barcenas,* 19 I&N Dec. at 611; *Matter of Gomez-Gomez,* 23 I&N Dec. 522, 524 (BIA 2002) (en banc). Accordingly, it was properly admitted into evidence. The evidentiary review conducted in bond proceedings is based on "a preliminary evaluation of the facts and evidence" and is necessarily more flexible and less structured than an adversarial hearing on the merits. *Matter of R-A-V-P-*, 27 I&N Dec. 803, 804 (BIA 2020)*.* Therefore, an Immigration Judge may consider probative evidence of conduct and risk in assessing custody, even if that evidence may not prove to be sufficient to support ultimate determinations in the underlying removal proceedings. *See id.*; *Matter of Guerra,* 24 I&N Dec. at 39–40.

These considerations are especially important in bond proceedings where, as here, the evidence bears on national security. The Board has held that dangerousness in the bond context may be established through direct or

circumstantial evidence reflecting threats to national security. *Matter of Fatahi*, 26 I&N Dec. at 793–94; *see also Matter of D-J-*, 23 I&N Dec. 572, 579 (A.G. 2003) (holding that national security considerations provide a reasonable foundation to deny release on bond under section 236(a) of the INA, 8 U.S.C. § 1226(a)). Immigration Judges may properly consider agency intelligence assessments, investigative memoranda, and other government records that are probative of whether the respondent's release would present a danger, including a potential national security risk. *See Matter of D-J-*, 23 I&N Dec. at 579; *see also Matter of J-A-*, 29 I&N Dec. 253, 255–56 (BIA 2025) (holding that an FBI memorandum was properly admitted and considered as probative evidence bearing on whether the alien presents a national security risk). Given the Government's compelling interest in addressing national security threats, bond proceedings may consider investigative assessments relating to that risk.

In light of the above, we conclude that the FBI Letterhead Memorandum was properly admitted. An FBI Letterhead Memorandum indicating that the respondent is a potential national security risk warrants significant weight in bond proceedings. *See Matter of H-L-H- & Z-Y-Z-*, 25 I&N Dec. 209, 212 (BIA 2010) ("[T]he Board has authority to give different weight to the evidence from that given by the Immigration Judge."), *rev'd on other grounds by Hui Lin Huang v. Holder*, 677 F.3d 130 (2d Cir. 2012). In this case, the memorandum was issued on FBI letterhead by the Unit Chief of the China Foreign Influence Unit of the Counterintelligence Division and states that the FBI maintains an active investigation of the respondent based on its belief that she is employed by and actively engaged with the Chinese Government. Such evidence is clearly probative of whether the respondent's release would pose a danger, including a potential national security risk. *See Matter of Fatahi*, 26 I&N Dec. at 793–94; *Matter of J-A-*, 29 I&N Dec. at 255–56. The respondent offered no persuasive evidence rebutting the substance of the FBI's national security assessment. She relied primarily on the absence of criminal history, community ties, and general denials of wrongdoing. Although such factors are relevant, they are insufficient to outweigh a facially credible national security assessment by a government agency in these bond proceedings. *See Matter of Fatahi*, 26 I&N Dec. at 794–95.

Accordingly, on this record, the respondent has failed to meet her burden of establishing that her release would not pose a danger to persons or property. In light of the FBI memorandum and the absence of meaningful

countervailing evidence addressing the national security concerns it raises, continued detention is warranted.[1]

The respondent's remaining challenges to DHS' evidence fall outside the limited scope of these bond proceedings, which are "separate and apart from the removal hearing." *Matter of Guerra*, 24 I&N Dec. at 40 n.2. These bond proceedings address only whether the respondent should remain detained during the pendency of removal proceedings and are not a final resolution of contested factual allegations, suppression claims, or the ultimate determination of removability or relief from removal. *See Matter of R-A-V-P-,* 27 I&N Dec. at 804.

The respondent's motion to terminate removal proceedings and related arguments concerning the notice to appear, jurisdiction, and other arguments are likewise not properly before us in this custody appeal. *See id.* Those other issues must be litigated in the underlying removal proceedings. Therefore, we will deny the respondent's motions.

Accordingly, we will sustain DHS' appeal and order that the respondent remain detained without bond.

**ORDER:** DHS' appeal is sustained.

**FURTHER ORDER:** The respondent's motions are denied.

**FURTHER ORDER:** The Immigration Judge's decision is vacated, and the respondent is ordered detained without bond.

---

[1] We decline to address whether the respondent is a flight risk as a finding of dangerousness is legally dispositive of the alien's eligibility for release. *Matter of Urena*, 25 I&N Dec. at 141.