# Matter of Hussam FATAHI, Respondent

*Decided August 3, 2016*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

In determining whether an alien presents a danger to the community at large and thus should not be released on bond pending removal proceedings, an Immigration Judge should consider both direct and circumstantial evidence of dangerousness, including whether the facts and circumstances present national security considerations.

FOR RESPONDENT: Sehla Ashai, Esquire, Richardson, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jonathan Goulding, Senior Attorney

BEFORE: Board Panel: ADKINS-BLANCH, Vice Chairman; MALPHRUS, Board Member; GELLER, Temporary Board Member.

MALPHRUS, Board Member:

In a decision dated February 29, 2016, an Immigration Judge denied the respondent's request for release on bond. The reasons for the Immigration Judge's custody order are set forth in an April 5, 2016, bond memorandum. The respondent has appealed from the Immigration Judge's decision. The Department of Homeland Security ("DHS") has submitted a brief in support of the Immigration Judge's bond determination. The respondent's appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native of Iraq and citizen of Syria, who entered the United States as a K-1 nonimmigrant on January 26, 2014, with a Syrian passport. He adjusted his status to that of conditional permanent resident on July 25, 2014, based on his marriage to a United States citizen. In January 2016, after receiving information that the respondent's passport may have been fraudulent, DHS agents questioned him about the validity and origin of his passport. The respondent informed the DHS officials that he obtained his passport through his father, who lives in Turkey, rather than by applying at his local consulate. The respondent voluntarily surrendered

his passport to the DHS officials for inspection. He was permitted to depart the United States on a previously scheduled trip to Turkey.

When the respondent returned to the United States on February 6, 2016, he was detained and further questioned about the origins of his passport. He admitted to the DHS that he obtained the passport in an improper manner through unofficial channels. He also changed his explanation as to why he obtained his passport through his father. When initially questioned in January, he said he obtained the passport through his father because he thought it would be easier and quicker to do so through family members. However, upon his return, he told the DHS that he thought the consulate would not issue him a passport because he had not fulfilled his required military service with the Syrian Government. In addition, although the respondent had initially stated that he did not complete any application or paperwork for his passport, he later indicated that he had filled out a form.

On February 8, 2016, the DHS issued a notice to appear, charging that the respondent is removable under section 237(a)(1)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(A) (2012), as an alien who was inadmissible at the time of his adjustment of status under sections 212(a)(6)(C)(i), (7)(A)(i)(I), and (B)(i)(I) of the Act, 8 U.S.C. §§ 1182(a)(6)(C)(i), (7)(A)(i)(I), and (B)(i)(I) (2012), because he procured a visa by fraud or willful misrepresentation of a material fact, was an immigrant who did not present a valid passport, and was a nonimmigrant who was not in possession of a valid passport. The respondent requested a bond hearing before the Immigration Judge.

Based on DHS forensic laboratory evidence, the Immigration Judge found that the respondent had entered the United States using a fraudulent "stolen blank" passport, meaning that the passport book was issued legitimately by the issuing government, but the respondent's identity information was entered without the government's approval by an unauthorized person. Based on documents from Interpol and the Embassy of Greece in Ankara, the Immigration Judge found that the respondent's passport was within a series of blank passports that had been stolen from the Syrian Government by operatives of the Islamic State in Iraq and Syria, a terrorist organization. Finally, the Immigration Judge relied on the evidence proffered by the respondent during his bond hearing and the Record of Deportable/Inadmissible Alien (Form I-213) to find that the respondent knew his passport was obtained through unofficial channels and that he made misrepresentations to DHS agents when questioned about his passport. [1]    Accordingly, the Immigration Judge determined that the

---

[1]   To the extent the respondent alleges that the Immigration Judge should not have relied on the Form I-213 and that his finding that the respondent made misrepresentations is

(continued . . .)

respondent should be held without bond under section 236(a) of the Act, 8 U.S.C. § 1226(a) (2012), because he is a danger to the community and a flight risk. On appeal, the respondent argues that the information on which the Immigration Judge relied is inadequate to support the denial of bond.[2]

## II. ANALYSIS

Under section 236(a) of the Act, the Attorney General has the authority to grant bond in the exercise of discretion, which has been delegated to the Immigration Judges and the Board. *Matter of Guerra*, 24 I&N Dec. 37, 39 (BIA 2006). An alien who seeks a change in custody status must establish to the satisfaction of the Immigration Judge and the Board that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.* at 40.

The Supreme Court has long recognized national security concerns as a fundamental consideration in immigration bond proceedings. *Demore v. Kim*, 538 U.S. 510, 523−24, (2003) (discussing *Carlson v. Landon*, 342 U.S. 524 (1952)); *Reno v. Flores*, 507 U.S. 292, 295 (1993). In *Matter of Patel*, 15 I&N Dec. 666, 666 (BIA 1976), we held that under the general bond provisions of former section 242(a) of the Act, 8 U.S.C. § 1252(a) (1976), an alien should not be detained unless he presents a threat to national security or a risk of flight. We later expanded the national security aspect of custody determinations to include a consideration of the alien's dangerousness in the criminal context. *See Matter of Andrade*, 19 I&N Dec. 488, 490 (BIA 1987) (holding that the alien's extensive and recent criminal record should be considered when determining bond); *see also Matter of Drysdale*, 20 I&N Dec. 815, 816−18 (BIA 1994).

After the general bond authority provisions were recodified at section 236(a) of the Act, we applied those provisions and the regulation at 8 C.F.R. § 236.1(c)(8) (1999), to hold that an alien who seeks a change in custody status must establish that he does not pose a danger to persons or

_____

unfounded, we do not agree. The respondent has presented no evidence to show that the Form I-213 is inaccurate or otherwise unreliable or that the Immigration Judge clearly erred in making certain findings, some of which are based, in part, on information in the form. *See Matter of Barcenas*, 19 I&N Dec. 609, 611 (BIA 1988) (explaining that a Form I-213 is generally considered admissible and inherently reliable, absent any indication that it contains information that is incorrect or was obtained by coercion or force); *Matter of Mejia*, 16 I&N Dec. 6, 8 (BIA 1976) (same).

[2] We review the Immigration Judge's findings of fact, including those relating to credibility, to determine if they are clearly erroneous. 8 C.F.R. § 1003.1(d)(3)(i) (2016). We review de novo all questions of law, discretion, and judgment. 8 C.F.R. § 1003.1(d)(3)(ii).

property and that he is not a flight risk. *See Matter of Adeniji*, 22 I&N Dec. 1102, 1112−13 (BIA 1999), *modified on other grounds*, *Matter of Garcia Arreola*, 25 I&N Dec. 267 (BIA 2010); *see also* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 444, 450 (Jan. 3, 1997) (explaining that the new general bond provisions "essentially preserve[] the status quo"). In that decision, we continued to recognize the pertinence of an alien's threat to national security under section 236(a) of the Act. *Matter of Adeniji*, 22 I&N Dec. at 1116 n.4. The Attorney General also has stated that "national security considerations" provide a reasonable basis to deny release on bond under section 236(a). *Matter of D-J-*, 23 I&N Dec. 572, 579 (A.G. 2003).

"Dangerous aliens are properly detained without bond" so an "Immigration Judge should only set a bond if he first determines that the alien does not present a danger to the community." *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009). In determining whether to release an alien on bond, "[a]ny evidence in the record that is probative and specific can be considered." *Matter of Guerra*, 24 I&N Dec. at 40−41. An alien's dangerousness to the community at large is interrelated with considerations of whether he poses a threat to national security.

The Immigration Judge ordered that the respondent remain detained without bond after determining that he is a danger to the community based on how he obtained his passport and the misrepresentations he made to the DHS in that regard. The respondent argues that the evidence is insufficient to support this determination, emphasizing that there is no evidence that he knew the passport was stolen by terrorists before he received it and that no direct link has been established between him and any terrorist organization. He asserts that without such proof, the way he obtained his passport bears little relevance to his eligibility for bond. We do not agree.

The circumstances surrounding the respondent's use of this particular passport gave the Immigration Judge ample reason to deny his request for bond. The passport is a falsified document that the respondent knowingly obtained. The fact that it was not issued by a proper governmental entity raises questions as to his identity. His explanations for how he obtained the passport were inconsistent. Moreover, even if these circumstances were deemed insufficient to deny bond, there is the added dimension of the document passing through the hands of a terrorist organization, which raises the question whether the respondent poses a national security risk.

In support of his request for bond, the respondent notes that he has not been charged with or convicted of any crime and there is no evidence that he supports any terrorist organization. He also presented evidence that he is married to a United States citizen and has steady employment, as well as

letters of support from members of his community. He emphasizes that after his initial questioning by the DHS, he returned to the United States after his recent trip to Turkey.

However, we agree with the Immigration Judge that the respondent's evidence is insufficient to show that, based on the totality of the facts and circumstances presented, he does not present a danger to the community. *See Matter of Guerra*, 24 I&N Dec. at 40 (stating that an alien has the burden to demonstrate that he is not a danger to the community at large); *see also Matter of D-R-*, 25 I&N Dec. 445, 454−55 (BIA 2011) (stating that Immigration Judges may make reasonable inferences from direct and circumstantial evidence in the record and are not required to interpret the evidence in the manner advocated by the respondent). [3] The question whether an alien poses a danger to the community is broader than determining if the record contains proof of specific acts of past violence or direct evidence of an inclination toward violence. *See Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991) ("Although [the alien] does not appear to pose any direct threat to individual citizens, . . . he may constitute a more general threat to national security, which is also a proper basis for detention." (citation omitted)). In this case, the circumstantial evidence and the respondent's misrepresentations raise significant safety and security concerns that justify his continued detention while removal proceedings are pending. *See Matter of Luis*, 22 I&N Dec. 747, 759−60 (BIA 1999) (noting that circumstantial evidence can be as persuasive as direct evidence (citing *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960))).

For these reasons, we affirm the Immigration Judge's determination that the respondent poses a danger to the community at large and should be held without bond. Therefore we need not reach the question whether he is a flight risk. *See Matter of Guerra*, 24 I&N Dec. at 38. Accordingly, the respondent's bond appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

[3] The respondent is a conditional permanent resident, but his immigration status does not affect his burden of proof in bond proceedings. Although section 236(a) of the Act does not specifically address the burden of proof, it provides that the Attorney General has broad discretion to detain an alien "pending a decision on whether the alien is to be removed from the United States" and "may continue to detain" or "may release the alien" during that time. We have consistently held that aliens have the burden to establish eligibility for bond while proceedings are pending. *See Matter of Urena*, 25 I&N Dec. at 141; *Matter of Guerra*, 24 I&N Dec. at 40; *Matter of Adeniji*, 22 I&N Dec. at 1111−13 (applying 8 C.F.R. § 236.1(c)(8)).