## Matter of Jonathan Javier YAJURE HURTADO, Respondent

*Decided September 5, 2025*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Based on the plain language of section 235(b)(2)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1225(b)(2)(A) (2018), Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission.

FOR THE RESPONDENT: Gabriel Harrison, Esquire, Bellingham, Washington

FOR THE DEPARTMENT OF HOMELAND SECURITY: Cassidy A. Cloninger, Associate Legal Advisor

BEFORE: Board Panel: HUNSUCKER and MONTANTE, Appellate Immigration Judges; MCCLOSKEY, Temporary Appellate Immigration Judge.

HUNSUCKER, Appellate Immigration Judge:

The respondent, a native and citizen of Venezuela, appeals from the Immigration Judge's April 18, 2025, order denying his request for a redetermination of his custody status.[1] The Immigration Judge determined that he lacked jurisdiction to hear the respondent's bond request because the respondent was subject to mandatory detention under section 235(b)(2) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(2) (2018) and, in the alternative, that the respondent is a flight risk.[2] This case presents an issue that the Board has not previously addressed in a precedential decision—the Immigration Judge's authority to hold a bond hearing for an alien present in the United States who has not been admitted after inspection.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondent crossed the border into the United States without inspection in November 2022 near El Paso, Texas. United States Citizenship and Immigration Services granted him temporary protected status in 2024,

---

[1] Throughout the remainder of this decision, we will use the term "bond hearing" to reference any hearing in which the Immigration Judge considers any aspect of an alien's detention or conditions of release.

[2] On April 30, 2025, the Immigration Judge issued a written memorandum in support of the bond order.

but that status expired on April 2, 2025. The respondent was apprehended by immigration officials, and on April 8, 2025, the Department of Homeland Security ("DHS") issued a notice to appear charging the respondent as inadmissible under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i) (2018), for being "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General."

The respondent requested a bond hearing before the Immigration Judge. At the hearing, the Immigration Judge determined he had no jurisdiction to set bond under the facts of the respondent's case. Alternatively, the Immigration Judge stated he would have denied bond because the respondent is a flight risk. The respondent timely appealed to the Board.

On July 18, 2025, the Board issued a request for supplemental briefing, asking the parties to specifically address whether the Immigration Judge has the authority to conduct a bond hearing for an alien who is present in the United States without admission. Both parties filed supplemental briefs.

## II.  STATUTORY AND REGULATORY BACKGROUND

We review de novo whether an Immigration Judge has the authority to consider the bond request of an alien who entered the United States without admission and who has been present in the United States for at least 2 years. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2025). The authority of an Immigration Judge to adjudicate any matter, including a request for a bond, is limited to the authority that is delegated to the Immigration Judge by the INA and the Attorney General through regulation.[3] *See* 8 C.F.R. § 1003.10(b) (2025); *see also Matter of A-W-*, 25 I&N Dec. 45, 46 (BIA 2009); *Matter of D-J-*, 23 I&N Dec. 572, 575 (A.G. 2003).

---

[3]   The authority of an Immigration Judge to consider a bond request is impacted by legal authorities which generally define that authority in the negative. For example, the Immigration Judge is without authority to conduct a custody redetermination hearing for aliens in exclusion proceedings. *See* 8 C.F.R. § 1003.19(h)(2)(i)(A) (2025). An Immigration Judge is also without authority to conduct a custody redetermination hearing for an arriving alien, including an alien paroled after arrival pursuant to section 212(d)(5) of the INA, 8 U.S.C. § 1182(d)(5). *See* 8 C.F.R. § 1003.19(h)(2)(i)(B); *see also Matter of Oseiwusu*, 22 I&N Dec. 19, 20 (BIA 1998). Various other sections of the INA and the regulations further prohibit the Immigration Judge from considering custody redetermination under certain circumstances. *See* INA § 235(b)(1)(B)(iii)(IV), (b)(2)(A), 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), (b)(2)(A); INA § 236(c), 8 U.S.C.A. § 1226(c) (West 2025); 8 C.F.R. §§ 235.3(b)(1), 1003.19(h)(1)(i)(A)–(E) (2025).

A.  Detention Under Section 235

The inspection, detention, and removal of aliens who have not been admitted is governed by section 235 of the INA, 8 U.S.C. § 1225.  There, Congress defined an applicant for admission as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)."  INA § 235(a)(1), 8 U.S.C. § 1225(a)(1).

Under section 235, Congress created three different categories of applicants for admission.  The first two categories are covered by section 235(b)(1)(A) of the INA, 8 U.S.C. § 1225(b)(1)(A).  They include: (1) arriving aliens inadmissible under section 212(a)(6)(C) or 212(a)(7), 8 U.S.C. § 1182(a)(6)(C), (a)(7), and (2) aliens not admitted or paroled into the United States who are inadmissible under section 212(a)(6)(C) or 212(a)(7), 8 U.S.C. § 1182(a)(6)(C), (a)(7), and "who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that [they] ha[ve] been physically present in the United States continuously for the 2-year period immediately prior to the date of determination of inadmissibility."    INA  §  235(b)(1)(A)(i),  (iii)(II),  8  U.S.C. § 1225(b)(1)(A)(i), (iii)(II); *see also* 8 C.F.R. § 235.3(b)(1) (2025).  The INA explicitly requires that aliens who fall into either of these two categories are subject to mandatory detention for the duration of their immigration proceedings.    *See*  INA  §  235(b)(1)(B)(ii),  (iii)(IV),  8  U.S.C. § 1225(b)(1)(B)(ii), (iii)(IV); *see also* 8 C.F.R. § 235.3(b)(2)(iii).  Thus, an Immigration Judge lacks authority to hear a bond request filed by an applicant for admission in either of these two categories.  *See Matter of M-S-*, 27 I&N Dec. 509, 515–19 (A.G. 2019).

The third category of applicants for admission subject to the inspection, detention, and removal procedures set forth in section 235 of the INA, 8 U.S.C. § 1225, are those aliens who are seeking admission and who an immigration officer has determined are "not clearly and beyond a doubt entitled to be admitted."  INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A).  This category is a "catchall provision that applies to all applicants for admission not covered by [section 235(b)(1)]."  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Like with the first two categories of applicants for admission, the INA explicitly requires that this third "catchall" category of applicants for admission be mandatorily detained for the duration of their

immigration proceedings.[4]    *See* INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A); *see also Jennings*, 583 U.S. at 299 (interpreting the "plain meaning" of sections 235(b)(1) and (2) to mean that applicants for admission be mandatorily detained for the duration of their immigration proceedings); 8 C.F.R. § 235.3(b)(1)(ii).

## B.  Detention Under Section 236

Section 236 of the INA, 8 U.S.C.A. § 1226 (West 2025), provides additional direction for the apprehension and detention of aliens "pending a decision on whether the alien is to be removed from the United States."  INA § 236(a), 8 U.S.C.A. § 1226(a).  Section 236 "generally governs the process of arresting and detaining" aliens who are deportable under section 237(a), 8 U.S.C. § 1227(a) (2018), including "aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission."  *Jennings*, 583 U.S. at 288 (citing INA § 237(a)(1), (2), 8 U.S.C. § 1227(a)(1), (2)).

The detention provisions of section 236, distinguish between two groups of aliens.  The first group consists of aliens arrested on a warrant issued by DHS, who, subject to certain restrictions, may be detained or released on bond or conditional parole.  INA § 236(a), 8 U.S.C.A. § 1226(a).  The regulatory provision at 8 C.F.R. § 1236.1(d) (2025) authorizes Immigration Judges to "exercise the authority in section 236 of the [INA] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter."  The second group of aliens identified in section 236 are certain defined categories of "criminal aliens" subject to mandatory detention under section 236(c) of the INA, 8 U.S.C.A. § 1226(c).  An Immigration Judge is without authority to consider a bond request filed by an alien falling into this category.

Section 236 does not purport to overrule the mandatory detention requirements for arriving aliens and applicants for admission explicitly set forth in section 235(b)(1) and (2) of the INA, 8 U.S.C. § 1225(b)(1), (2). Thus, while an inadmissible alien who establishes that he or she has been

---

[4]  While these aliens might be subject to parole by the Attorney General or DHS, that is not an issue that the Immigration Judge has authority to consider.  *See* INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. 212.5(a) (2025) (designating who may exercise authority to grant parole); *see also Jennings*, 583 U.S. at 300 (noting that the Attorney General may grant aliens detained under sections 235(b)(1) and (b)(2) temporary parole into the United States "for urgent humanitarian reasons or significant public benefit" (quoting INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A)).

present in the United States for over 2 years is not subject to the expedited removal process, the alien nevertheless "shall be detained for a proceeding under section 240." INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A).

## III. APPLICATION OF THE RESPONDENT

The issue presented on appeal is one of statutory construction: Does the INA require that all applicants for admission, even those like the respondent who have entered without admission or inspection and have been residing in the United States for years without lawful status, be subject to mandatory detention for the duration of their immigration proceedings, and thus the Immigration Judge lacks authority over a bond request filed by an alien in this category? In addressing this issue, the Board must begin with the "plain language" of the INA. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, [the] analysis begins with the plain language of the statute.").

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Beecham v. United States*, 511 U.S. 368, 372 (1994) ("The plain meaning that we seek to discern is the plain meaning of the whole statute, not of isolated sentences."). The Board does not "view the language of statutory provisions in isolation but instead . . . read[s] the words 'in their context and with a view to their place in the overall statutory scheme.'" *Matter of C-T-L-*, 25 I&N Dec. 341, 345 (BIA 2010) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)); *see also Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning.").

Under the plain reading of the INA, we affirm the Immigration Judge's determination that he did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings. *See Jennings*, 583 U.S. at 300 (holding that the INA "unequivocally mandates that aliens falling within the scope [of section 235(b)(1) and (2)] 'shall' be detained," and that "[u]nlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement" (quoting *Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 171 (2016))).

The respondent concedes that he is an "applicant for admission" under section 235(a)(1) of the INA, 8 U.S.C. § 1225(a)(1), by virtue of his entry without inspection.  The respondent also contends, however, that because he has been residing in the interior of the United States for almost 3 years (since his November 2022 entry without inspection), he cannot be considered as "seeking admission" as the phrase is used in section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A).

The respondent's argument is not supported by the plain language of the INA, and actually creates a legal conundrum.  If he is not admitted to the United States (as he admits) but he is not "seeking admission" (as he contends), then what is his legal status?  The respondent provides no legal authority for the proposition that after some undefined period of time residing in the interior of the United States without lawful status, the INA provides that an applicant for admission is no longer "seeking admission," and has somehow converted to a status that renders him or her eligible for a bond hearing under section 236(a) of the INA, 8 U.S.C.A. § 1226(a).  *See Matter of Lemus*, 25 I&N Dec. 734, 743 & n.6 (BIA 2012) (noting that "many people who are not *actually* requesting permission to enter the United States in the ordinary sense [including aliens present in the United States who have not been admitted] are nevertheless deemed to be 'seeking admission' under the immigration laws").  The respondent's argument also leaves unanswered which applicants for admission would be covered by section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), if, as he argues, applicants for admission who have been living for years in the United States without admission and without lawful status are somehow exempt from section 235(b)(2)(A) and instead fall under section 236.

The respondent also contends that the Immigration Judge's interpretation of section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), as applying to aliens who are present in the United States without inspection renders superfluous sections 236(c)(1)(A), (D), and (E), 8 U.S.C.A. § 1226(c)(1)(A), (D), (E), which bar certain categories of inadmissible aliens from requesting bond under section 236(a) of the INA, 8 U.S.C.A. § 1226(a).  According to the respondent, Congress would not have enacted the provisions of sections 236(c) and also amended the provision as it did with the recent passage of the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025), if those aliens were already subject to mandatory custody under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A).[5]  The respondent's argument is

---

[5]  The Laken Riley Act amended section 236(c) of the INA, 8 U.S.C.A. § 1226(c), to require that the Attorney General take into custody certain criminal aliens who are deemed inadmissible, including for being "present in the United States without being admitted or

unavailing, however, because nothing in the statutory text of section 236(c), including the text of the amendments made by the Laken Riley Act, purports to alter or undermine the provisions of section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), requiring that aliens who fall within the definition of the statute "shall be detained for a proceeding under section 240."

The respondent's interpretation would, in fact, render section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), superfluous. Interpreting the provisions of section 236(c) as rendering null and void the provisions of section 235(b)(2)(A) (or even the provisions of section 235(b)(1) of the INA, 8 U.S.C. § 1225(b)(1)), would be in contravention of the "cardinal principle of statutory construction," which is that courts are to "'give effect, if possible, to every clause and word of a statute,' rather than to emasculate an entire section." *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (citations omitted).

Further, the fact that section 236(c) of the INA, 8 U.S.C.A. § 1226(c), mandates detention of a subset of the category of aliens that are also subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), is not a basis on which to determine that section 235(b)(2)(A) is null and void. *See Barton v. Barr*, 590 U.S. 222, 239 (2020) (holding that because "redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication,"—"[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text").

The respondent also argues that the relevant legislative history of the INA supports an interpretation of the INA that authorizes bond and bond hearings under section 236(a) for aliens present in the United States without admission. On the contrary, the legislative history supports the interpretation the Board is taking here. The statutory definition of an "applicant for admission" at section 235(a)(1) of the INA, 8 U.S.C. § 1225(a)(1), was added to the INA in 1996, with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, § 302(a), 110 Stat. 3009-546, 3009-579. Before the passage of IIRIRA, the INA provided for inspection of aliens only when they were arriving at a port of entry. *See* former INA § 235(a), 8 U.S.C. § 1225(a) (1994) (discussing "aliens arriving at ports of the United States"); *see also*

_____

paroled," under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i), and who have been arrested, charged with, or convicted of certain crimes, including theft.

former INA § 235(b), 8 U.S.C. § 1225(b) (discussing the detention of aliens by "the examining immigration officer at the port of arrival"). Aliens who were "seeking admission" at a port of entry under former section 235 of the INA, 8 U.S.C. § 1225, or who had been paroled into the United States and were determined to be excludable were placed in exclusion proceedings and subject to mandatory detention, with potential release solely by means of a grant of parole under section § 212(d)(5), 8 U.S.C. § 1182(d)(5) (1994). *See also* former INA §§ 212(a), 235(a)–(b), 236, 8 U.S.C. §§ 1182(a), 1225(a)–(b), 1226 (1994); *see also* 8 C.F.R. § 235.3(a)–(c) (1995).

At the same time, aliens who were "in the United States" and within certain classes of deportable aliens, including those "who entered the United States without inspection or at any time or place other than as designated by the Attorney General" were deemed deportable under former section 241(a) of the INA, 8 U.S.C. § 1251(a) (1994), and placed in deportation proceedings. Those aliens were entitled to request release on bond. *See* former INA § 242(a)(1), 8 U.S.C. § 1252(a)(1) (1994); *see also* 8 C.F.R. § 242.2(c)(1) (1995). Thus, the placement of an alien in exclusion or deportation proceedings before the 1996 passage of IIRIRA depended on whether the alien had made an "entry" within the meaning of the INA. *See* former INA § 101(a)(13), 8 U.S.C. § 1101(a)(13) (1994) (defining "entry" as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession").

In 1996, Congress enacted IIRIRA, which, among other things, substituted the term "admission" for "entry," and replaced deportation and exclusion proceedings with removal proceedings. *See Martinez v. Att'y Gen. of U.S.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) ("Prior to the 1996 amendment, the INA assessed status on the basis of 'entry' as opposed to 'admission.'"). Congress acted, in part, to remedy the "unintended and undesirable consequence" of having created a statutory scheme where aliens who entered without inspection "could take advantage of the greater procedural and substantive rights afforded in deportation proceedings," including the right to request release on bond, while aliens who had "actually presented themselves to authorities for inspection were restrained by 'more summary exclusion proceedings,'" and were subject to mandatory custody. *Id.* (quoting *Hing Sum v. Holder*, 602 F.3d 1092, 1100 (9th Cir. 2010).

The legislative history of IIRIRA explains that in replacing the definition of "entry" with a definition for "admission" and "admitted," Congress:

> intended to replace certain aspects of the current "entry doctrine," under which illegal aliens who have entered the United States without inspection gain equities and

privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry. Hence, the pivotal factor in determining an alien's status will be whether or not the alien has been lawfully admitted.

H.R. Rep. No. 104-469, pt. 1, at 225 (1996). The House Judiciary Committee Report for what would become IIRIRA further explains:

> Currently, aliens who have entered without inspection are deportable under section 241(a)(1)(B). Under the new "admission" doctrine, such aliens will not be considered to have been admitted, and thus, must be subject to a ground of inadmissibility, rather than a ground of deportation, based on their presence without admission. (Deportation grounds will be reserved for aliens who have been admitted to the United States.).

*Id.* at 226.

Thus, after the 1996 enactment of IIRIRA, aliens who enter the United States without inspection or admission are "applicants for admission" under section 235(a)(1) of the INA, 8 U.S.C. § 1225(a)(1), and subject to the inspection, detention, and removal procedures of section 235(b) of the INA, 8 U.S.C. § 1225(b). The legislative history confirms that, under a plain language reading of section 235(b)(1) and (2) of the INA, 8 U.S.C. § 1225(b)(1), (2), Immigration Judges do not have authority to hold a bond hearing for arriving aliens and applicants for admission. *See Chapman v. Hous. Welfare Rts. Org.*, 441 U.S. 600, 608 (1979) (noting that the Supreme Court's "task is to interpret the words of these statutes in light of the purposes Congress sought to serve."); *see also Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990) ("The starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980))).

The respondent contends that the statement in the House Judiciary Committee Report that "[s]ection 236(a) restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States" demonstrates that Congress intended to retain the same discretionary detention scheme for aliens unlawfully in the United States that was in place prior to the 1996 enactment of IIRIRA. H.R. Rep. No. 104-469, pt. 1, at 229. The respondent's argument is unavailing, however, because nothing in the portion of the report cited by the respondent suggests that it was intended to undermine or alter the earlier statements, in the same report, that aliens present in the United States without inspection will be considered "seeking

admission." *See id.* at 225. The House Judiciary Committee Report makes clear that Congress intended to eliminate the prior statutory scheme that provided aliens who entered the United States without inspection more procedural and substantive rights than those who presented themselves to authorities for inspection. *See id.*; *see also Martinez*, 693 F.3d at 413 n.5. Interpreting the provisions of the INA in the manner the respondent argues would essentially repeal the statutory fix that Congress made with the 1996 passage of IIRIRA.

As the legislative history reflects, the Immigration Judge's interpretation of the respondent as an applicant for admission under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and therefore subject to mandatory detention and ineligible for a bond hearing is supported by the plain language of the INA. *See Jennings*, 583 U.S. at 297 ("Read most naturally, [sections 235(b)(1)] and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section [235(b)(1)] aliens are detained for 'further consideration of the application for asylum,' and [section 235(b)(2)] aliens are in turn detained for '[removal] proceeding[s].'" (last two alterations in original)). Thus, we affirm the Immigration Judge's interpretation, and hold, under a plain language reading of section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), Immigration Judges lack authority to hear bond requests or to grant bond to aliens, like the respondent, who are present in the United States without admission.

Citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the respondent also contends in his supplemental brief that DHS' "longstanding practice" of treating aliens who are present in the United States without inspection as detained under section 236(a) of the INA, 8 U.S.C.A. § 1226(a), and therefore eligible for a bond, supports his argument that he is likewise detained under section 236(a). *See Loper Bright*, 603 U.S. at 386 ("'[T]he longstanding "practice of the government"'—like any other interpretive aid—'can inform [a court's] determination of "what the law is."'" (citation omitted)).[6] Somewhat similarly, the respondent contends that Congress did

---

[6] We acknowledge that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection. However, we do not recall either DHS or its predecessor, the Immigration and Naturalization Service, previously raising the current issue that is before us. In fact, the supplemental information for the 1997 Interim Rule titled "Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures," 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997), reflects that the Immigration and Naturalization Service took the position at that time that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."

not intend the provisions of section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), to apply to aliens who are arrested after having lived in the United States for more than 2 years, as reflected in DHS' practice of treating those aliens as detained under section 236 of the INA, 8 U.S.C. § 1226.

The respondent's argument is unavailing, however, because the Supreme Court in *Loper Bright* made that statement specifically with respect to judicial interpretation of a "doubtful and ambiguous law." *Id.* at 385–86. As explained above, the statutory text of the INA is not "doubtful and ambiguous" but is instead clear and explicit in requiring mandatory detention of all aliens who are applicants for admission, without regard to how many years the alien has been residing in the United States without lawful status. *See* INA § 235(b)(1), (2), 8 U.S.C. § 1225(b)(1), (2). The Supreme Court in *Loper Bright* did not hold that the long-standing practice of the government can somehow change, or even eviscerate, explicit statutory text that is contrary to that practice. *See* 603 U.S. at 385–86; *see also Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021) (stating that "no amount of policy-talk can overcome a plain statutory command").

Likewise, the respondent's citation to *Matter of Akhmedov*, 29 I&N Dec. 166 (BIA 2025), does not support his arguments. The Board's statement in that decision that the respondent's custody determination was governed by section 236(a) of the INA, 8 U.S.C.A. § 1226(a), even though the respondent was present in the United States without inspection, *Matter of Akhmedov*, 29 I&N Dec. at 166, does not somehow eviscerate or nullify section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), or vest the Immigration Judge with authority over the respondent's bond request. Whether the respondent was subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and whether the Immigration Judge had authority to hear the bond request, were not issues presented to the Board in that case.

The respondent also argues that because DHS issued an arrest warrant in conjunction with the Notice to Appear and a Notice of Custody Determination, DHS has detained the respondent pursuant to section 236(a) of the INA, 8 U.S.C.A. § 1226(a), and the Immigration Judge therefore has statutory and regulatory authority to consider his request for a bond. The respondent cites *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), in support of his argument. *Matter of Q. Li*, 29 I&N Dec. at 69, held:

> [A]n applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the INA, 8 U.S.C.

§ 1225(b), and is ineligible for any subsequent release on bond under section 236(a) of the INA, 8 U.S.C. § 1226(a).

*Matter of Q. Li*, 29 I&N Dec. at 69, further stated that "[s]ubject to certain exceptions contained in section 236(c) of the INA, 8 U.S.C. § 1226(c), aliens detained under section 236(a) may be eligible for discretionary release on bond pursuant to section 236(a)(2) of the INA, 8 U.S.C. § 1226(a)(2)."

Our conclusion in *Matter of Q. Li* that aliens detained without a warrant while arriving in the United States are mandatorily detained under section 235(b) of the INA, 8 U.S.C. § 1225, is consistent with our holding in the present case. While the respondent reads *Matter of Q. Li* as suggesting that aliens present in the United States who are detained with a warrant of arrest are detained under section 236(a), that issue was beyond the scope of our decision in that case. Our acknowledgement that "aliens detained under section 236(a) may be eligible for discretionary release on bond" does not mean that *all* aliens detained while in the United States with a warrant of arrest are detained under section 236(a) and entitled to a bond hearing before the Immigration Judge, regardless of whether they are applicants for admission under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A).

In short, the mere issuance of an arrest warrant does not endow an Immigration Judge with authority to set bond for an alien who falls under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A). *See Matter of A-W-*, 25 I&N Dec. at 46 (discussing the limits on Immigration Judge authority); *Matter of D-J-*, 23 I&N Dec. at 575 (same); 8 C.F.R. § 1003.10(b); *see also* 8 C.F.R. § 235.3(b)(1)(ii). If it did, it would render meaningless the many prohibitions cited above on the authority of an Immigration Judge to set bond.

Ultimately, this issue of statutory interpretation is complicated by a patchwork of statutes implemented at different times and intended to address different issues. The INA is a complex set of legal provisions created at different times and modified over a series of years. Where these provisions impact one another, they cannot be read in a vacuum. *See Matter of C-T-L-*, 25 I&N Dec. at 345 (BIA 2010) (explaining that the Board does not "view the language of statutory provisions in isolation but instead [is] charged with reading the words 'in their context and with a view to their place in the overall statutory scheme'" (citation omitted)). Additionally, the fact that a statute specifically prohibits an Immigration Judge from doing a particular act cannot be read as authorizing the Immigration Judge to perform acts that are not otherwise specifically prohibited.

"'[A]n alien present in the United States who has not been admitted . . .' is deemed 'an applicant for admission.'" *DHS v. Thuraissigiam*, 591 U.S. 103, 109 (2020) (quoting INA § 235(a)(1), 8 U.S.C. § 1225(a)(1)); *see also Matter of Lemus*, 25 I&N Dec. at 743 ("Congress has defined the concept of an 'applicant for admission' in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission . . . ."). Applicants for admission remains such unless an immigration officer determines that they are "clearly and beyond a doubt entitled to be admitted." INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A). Failing to clearly and beyond a doubt demonstrate that they are entitled to admission, such aliens "shall be detained for a proceeding under section 240." *Id.*; *see also Jennings*, 583 U.S. at 288.

Aliens, like the respondent, who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer. Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an "admission." *See* INA § 101(a)(13)(A), 8 U.S.C. § 1101(a)(13)(A) (2018) (defining "admission"). Likewise, being arrested pursuant to a warrant and placed into removal proceedings does not constitute an admission. Therefore, just as Immigration Judges have no authority to redetermine the custody of arriving aliens who present themselves at a port of entry, they likewise have no authority to redetermine the custody conditions of an alien who crossed the border unlawfully without inspection, even if that alien has avoided apprehension for more than 2 years.

Holding otherwise would require reading the INA to conclude that Congress intended that aliens unlawfully entering the United States without inspection, particularly those who successfully evaded apprehension for more than 2 years, be rewarded with the opportunity for a bond hearing before an Immigration Judge, whereas aliens who present themselves to officers at a port of entry are ineligible for a bond hearing. This is an incongruous result which is not supported by the plain language or any reasonable interpretation of the INA.[7]

---

[7] Violations of the INA and the regulations often have consequences for aliens seeking relief and protection from removal. *See, e.g.*, Circumvention of Lawful Pathways, 88 Fed. Reg. 31314, 31314 (May 16, 2023) (codified at 8 C.F.R. pts. 1003 and 1208) (establishing a "rebuttable presumption of asylum ineligibility" for certain aliens who did not "avail themselves of a lawful, safe, and orderly pathway to the United States" or "seek asylum or other protection in a country through which they travel[ed]"). For example, aliens who have not been "inspected and admitted or paroled into the United States" are ineligible for

## IV.    CONCLUSION

The Immigration Judge properly held that he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235.3(b)(1)(ii).[8]  Accordingly, the following order will be entered.

**ORDER:**  The appeal is dismissed.

---

adjustment of status under section 245(a) of the INA, 8 U.S.C. § 1255(a) (2018).  *See also Sanchez v. Mayorkas*, 593 U.S. 409, 414 (2021).  Likewise, an applicant for asylum will, absent extraordinary or changed circumstances, be ineligible for relief if he or she did not file the application within 1 year of his or her last arrival in the United States.  *See* INA § 208(a)(2)(B), (D), 8 U.S.C. § 1158(a)(2)(B), (D).

[8]    As we are dismissing the respondent's appeal on the grounds that the Immigration Judge lacked jurisdiction to hear the respondent's motion for a bond, we need not address the Immigration Judge's alternative holding denying bond because the respondent did not meet his burden of proving that he is not a flight risk, or the respondent's appellate arguments contesting that alternative holding.  *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").