# Matter of Jose Alejandro RODRIGUEZ PENA, Respondent

*Decided by Board November 6, 2025[1]*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The Immigration Judge erred in concluding that the respondent is not a danger to the community where the respondent threatened to kill someone, reacted negatively to law enforcement intervention, and used an alias to evade arrest.

FOR THE RESPONDENT:  Pro se

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Gregory K. Mayer, Assistant Chief Counsel

BEFORE:  Board Panel:  HUNSUCKER and VOLKERT, Appellate Immigration Judges; MCCLOSKEY, Temporary Appellate Immigration Judge.

VOLKERT, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals from the Immigration Judge's May 1, 2025, order granting the respondent's release on a payment of a bond of $7,500.[2]  The respondent has not written to oppose the appeal.  We will sustain the appeal, vacate the Immigration Judge's order granting the respondent's release on bond, and order the respondent held in DHS' custody without bond.

The Immigration Judge concluded that the respondent did not constitute a danger to the community or a flight risk.[3]  Upon de novo review, we will

---

[1]  Pursuant to Order No. 6525-2025, dated December 8, 2025, the Attorney General designated the Board's decision in *Matter of Rodriguez Pena* (BIA Nov. 6, 2025), as precedent in all proceedings involving the same issue or issues.  *See* 8 C.F.R. § 1003.1(g)(3) (2025).  Editorial changes have been made consistent with the designation of the case as a precedent.

[2]  *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), is inapplicable because the respondent was admitted to the United States on April 19, 1996, as a B2 nonimmigrant, and charged with removability under section 237(a)(1)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(B) (2024).

[3]  The Immigration Judge's statement that "this respondent does not constitute a flight risk" is inconsistent with the determination that a $7,500 bond is required to ensure his presence at future hearings.  "Once it is determined that an alien does not present . . . [such

reverse the Immigration Judge's determination that the respondent met his burden to show that he is not a danger to the community.  *See* 8 C.F.R. §§ 1003.1(d)(3)(ii), 1236.1(c)(8) (2025).

For custody determinations under section 236(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C.A. § 1226(a) (West 2025), it is the alien's burden to establish that he is not a danger to the community at large.  *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006); 8 C.F.R. § 1236.1(c)(8) (2025).  An alien who presents a danger to persons or property should not be released from immigration custody during the pendency of removal proceedings.  *See Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009); *Matter of Drysdale*, 20 I&N Dec. 815, 817 (BIA 1994).  Relevant factors in determining whether an alien merits release on bond include how extensive, recent, and serious any criminal activity is.  *See Matter of Guerra*, 24 I&N Dec. at 40.

DHS submitted a background check showing that the respondent has had many encounters with law enforcement, including an arrest on drug trafficking related charges in North Carolina in 1997, an unknown encounter with law enforcement in Alaska in 2010, and a domestic violence related arrest in New Jersey in 2019 from an alleged incident in 2007.  The record does not contain police reports for, or other information describing the circumstances of, these arrests.  While DHS argues that he was indicted on drug charges, all charges against him were ultimately dismissed.  Therefore, on this record, we agree with the Immigration Judge that these arrests are not particularly probative of his dangerousness.  *See Matter of Arreguin*, 21 I&N Dec. 38, 42 (BIA 1995) ("[W]e are hesitant to give substantial weight to an arrest report, absent a conviction or corroborating evidence of the allegations contained therein.").

However, the record demonstrates that the respondent was recently arrested for engaging in violent and aggressive conduct directed at people in his community.  Specifically, a warrant for the respondent's arrest, which DHS submitted into evidence, states that on April 6, 2025, police arrested him after they heard him threaten to kill his friend by stating, "I am going to get a gun [and] shoot him."  The respondent was charged with "Terroristic Threats—Threats to Kill" in violation of section 2C:12-3(b) of the New

---

a] risk, then no bond should be required."  *Matter of Drysdale*, 20 I&N Dec. 815, 817 (BIA 1994).

Jersey Revised Statutes.  The respondent does not challenge the warrant's contents.

To establish that he is not a danger to the community, the respondent supplied an affidavit from the victim, who states that the respondent threatened him after a conversation turned into an argument in which he pushed the respondent.  He states that because the argument occurred near a police station, he does not think police were called to the scene and that he did not believe the respondent would harm him.  The respondent also provided an email from a prosecutor stating that the victim did not want to prosecute the case.  The Immigration Judge found that this evidence obviated any dangerousness.  However, the Immigration Judge does not appear to consider the victim's further explanation that "[the respondent] was truly just upset the police officers showed up and became irate at that if anything," and that "things escalated" and "became extra heated when the police came."

It is unclear at this juncture whether the proceedings are pending or dismissed.  Even so, it is well established that specific, probative, and reliable evidence of criminal conduct that has not produced a conviction may show that an individual poses a danger to the community.  *Matter of Guerra*, 24 I&N Dec. at 40–41 (explaining that it is proper to consider both arrests and convictions).  We find that the circumstances of the respondent's arrest raise rather than mitigate concerns over his erratic and volatile behavior.  *See Matter of Siniauskas*, 27 I&N Dec. 207, 208 (BIA 2018) ("In bond proceedings, it is proper . . . to consider not only the nature of a criminal offense but also the specific circumstances surrounding the alien's conduct.").  Threatening to kill someone over being pushed is a disproportionate response indicative of dangerousness.  Further, the respondent's negative reaction to law enforcement's attempt to intervene to ensure the safety of both his friend and the public demonstrates that he is a danger to the community.  We observe that the documentary record does not contain any statement, rehabilitation evidence, or assurance from the respondent about his conduct, and his counsel's statements below are not evidence.  *See Matter of J.J. Rodriguez*, 27 I&N Dec. 762, 765–66 (BIA 2020) (noting that statements by counsel are not evidence and are not entitled to evidentiary weight (citing *INS v. Phinpathya*, 464 U.S. 183, 188–89 n. 6 (1984))).

Moreover, there is evidence that the respondent falsely claimed in the past that he was a United States citizen named "Efrain Vazquez" born in Puerto Rico.  His use of an alias to evade arrest and falsely claim citizenship demonstrates disregard for our nation's criminal and immigration laws and

therefore indicates dangerousness. *See, e.g.*, *Matter of Fatahi*, 26 I&N Dec. 791, 794–95 (BIA 2016) (holding that circumstances surrounding the alien's use of a fraudulent passport and his misrepresentations to law enforcement "raise significant safety and security concerns that justify his continued detention while removal proceedings are pending"). So, too, does the fact that his 2025 arrest occurred while he was released from immigration detention on a $20,000 bond issued in 2019.

While the record contains evidence that the respondent is married to a United States citizen and has United States citizen children, "family and community ties generally do not mitigate an alien's dangerousness." *Matter of Siniauskas*, 27 I&N Dec. at 210. His other character references, which date back to his prior bond proceedings in 2019 and notably do not include a letter from his spouse, do not address his present dangerousness. Under these circumstances, we are unpersuaded that the respondent has met his burden to show that he is not a danger to the community. *See Matter of Fatahi*, 26 I&N Dec. at 793–94. We therefore conclude that he is not eligible for bond.

**ORDER:** DHS' appeal is sustained, and the Immigration Judge's May 1, 2025, decision is vacated.

**FURTHER ORDER:** The respondent is ordered detained without bond.